**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AL AND PO CORPORATION, | ) | |
| individually and on behalf of all others | ) | |
| similarly situated, | ) | |
| | ) | Case No. 14-cv-1243 |
| Plaintiff, | ) | |
| v. | ) | The Honorable Thomas M. Durkin |
| | ) | |
| QUALITY MEDICAL PRODUCTS, LLC, | ) | |
| a Florida limited liability company, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Submitted by:

Joseph J. Siprut
*jsiprut@siprut.com*
Ismael T. Salam
*isalam@siprut.com*

**SIPRUT PC**
17 N. State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.241.1260
www.siprut.com

*Attorneys for Plaintiff and the*
*Settlement Class*

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     PROCEDURAL HISTORY .................................................................................2

III.    THE PROPOSED SETTLEMENT ......................................................................5

        A.  Certification Of the Proposed Class ........................................................5

        B.  Class Relief .............................................................................................6

        C.  Class Notice ............................................................................................6

        D.  Incentive Award to Class Representative ................................................7

        E.  Attorneys' Fees and Expenses ................................................................7

IV.     THE PROPOSED SETTLEMENT IS FAIR AND SHOULD BE PRELIMINARILY
        APPROVED ........................................................................................................8

        A.  The Proposed Settlement Satisfies the Fairness Criteria ......................8

            1.  Strength of the Case ....................................................................8

            2.  Risk, Expense, & Complexity of Case .......................................10

            3.  The Opinion of Counsel ............................................................11

            4.  Extent of Discovery ...................................................................11

            5.  Presence of Governmental Participants ....................................12

V.      THE SETTLEMENT CLASS SHOULD BE PROVISIONALLY CERTIFIED; THE
        FORM AND METHOD OF NOTICE TO THE CLASS MEMBERS SHOULD BE
        APPROVED; AND, A HEARING REGARDING FINAL APPROVAL OF THE
        SETTLEMENT SHOULD BE SCHEDULED ......................................................12

        A.  The Class Should be Provisionally Certified .......................................12

            1.  Numerosity – F.R.C.P. 23(a) ....................................................13

            2.  Commonality/Predominance – F.R.C.P. 23(a)(2) and 23(b)(3) ..............14

            3.  Typicality – F.R.C.P. 23(a)(3) .................................................16

            4.  Adequacy of Representation – F.R.C.P. 23(a)(4)......................16

            5.  Superiority – F.R.C.P. 23(b)(3) ...............................................17

        B.  The Form and Method of Service of Class Notice Should Be Approved........18

        C.  The Court Should Schedule A Hearing For Final Settlement Approval .........20

VI.     CONCLUSION................................................................................................20

## TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)................................................................................12, 13, 18

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974)................................................................................18, 19

*Wal-Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541 (2011)................................................................................14

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

*Armstrong v. Board of Sch. Dirs. of City of Milwaukee,*
616 F.2d 305 (7th Cir. 1980) ................................................................8

*Butler v. Sears, Roebuck & Co.,*
727 F.3d 796 (7th Cir. 2013) ................................................................15

*Carnegie v. Household International, Inc.,*
376 F.3d 656 (7th Cir. 2004) ................................................................17

*Donovan v. Estate of Fitzsimmons,*
778 F.2d 298 (7th Cir. 1985) ................................................................10

*In re Corrugated Container Antitrust Litigation,*
643 F.2d 195 (5th Cir. 2010) ................................................................12

*Ira Holtzman, C.P.A. v. Turza,*
728 F.3d 682 (7th Cir. 2013) ................................................................14

*Isby v. Bayh,*
75 F.3d 1191 (7th Cir. 1996) ................................................................8

*Patterson v. Gen. Motors Corp.,*
631 F.2d 476 (7th Cir. 1980) ................................................................14

*Rosario v. Livaditis,*
963 F.2d 1013 (7th Cir. 1992) ................................................................14

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.,*
463 F.3d 646 (7th Cir. 2006) ................................................................8, 9

*Szabo v. Bridgeport Machines, Inc.,*
249 F.3d 672 (7th Cir. 2001) ................................................................13

*Williams v. Chartwell Fin. Serv., Ltd.,*
204 F.3d 748 (7th Cir. 2000) ................................................................12

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) ....................................................................................9

**UNITED STATES DISTRICT COURT CASES**

*A & L Indus., Inc. v. P. Cipollini, Inc.*,
2014 WL 906180 (D.N.J. Mar. 7, 2014)..................................................................20

*Able Home Health, LLC v. Healthy Advice Commc'ns., Inc.*,
12-cv-3019 (N.D. Ill.) .............................................................................................19

*Able Home Health, LLC and Dr. G. Neil Garrett DDS, PC v. Globe Med.-Surgical Supply Co.*,
12-cv-5608 (N.D. Ill.) .............................................................................................19

*C.E. Design, Ltd. v. King Supply Co., LLC*,
2012 WL 2976909 (N.D. Ill. July 20, 2012)...........................................................19

*City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*,
2014 WL 413533 (D.N.J. Feb. 3, 2014) ..................................................................20

*Dr. William P. Gress v. Northwood, Inc.*,
12-cv-7278 (N.D. Ill.) .............................................................................................19

*Fletcher v. ZLB Behring LLC*,
245 F.R.D. 328 (N.D. Ill. 2006)..............................................................................15

*Friedman v. Torchmark Corp.*,
2013 WL 1629084 (S.D. Cal. Apr. 16, 2013) ...........................................................9

*Gomez v. Ill. State Bd. of Educ.*,
117 F.R.D. 394 (N.D. Ill. 1987)..............................................................................17

*Hinman v. M and M Rental Ctr., Inc.*,
545 F. Supp. 2d 802 (N.D. Ill. 2008) ......................................................................16

*In re AT&T Mobility Wireless Data Services Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010)..............................................................................10

*In re Neopharm, Inc. Securities Litigation*,
225 F.R.D. 563 (N.D. Ill. 2004)..............................................................................16

*Kessler v. Am. Resorts Int'l*,
2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) ...........................................................8

*Lutz Appellate Servs., Inc. v. Curry*,
859 F. Supp. 180 (E.D. Pa.1994) ..............................................................................9

*Maxwell v. Arrow Fin. Servs., LLC*,
2004 WL 719278 (N.D. Ill. March 31, 2004)..........................................................13

*NB. Indus. v. Wells Fargo & Co.*,
2010 WL 4939970 (N.D. Cal. Nov. 30, 2010) ..........................................................9

*Phillips Randolph Enterprises, LLC v. Adler-Weiner Research Chicago, Inc.*,
526 F. Supp. 2d 851 (N.D. Ill. 2007) ................................................................9

*Physician's Healthsource, Inc. v. MulitPlan Servs. Corp.*,
2013 WL 5299134 (D. Mass. Sept. 18, 2013) ..................................................9

*Pope v. Harvard Banchares, Inc.*,
40 F.R.D. 383 (N.D. Ill. 2006).......................................................................13

*Radmanovich v. Combined Ins. Co. of Am.*,
216 F.R.D. 424 (N.D. Ill. 2003)......................................................................16

*Richard Wade Architects, P.C. v. Eng'g. Servs. and Prods. Co.*,
11-cv-9251 (N.D. Ill.) ....................................................................................20

*Scholes v. Stone, McGuire, & Benjamin*,
143 F.R.D. 181 (N.D. Ill. 1992)......................................................................14

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) ...........................................................8, 11

*Smith v. Nike Retail Servs., Inc.*,
234 F.R.D. 648 (N.D. Ill. 2006).......................................................................13

*Vandervort v. Balboa Capital Corp.*,
8 F. Supp. 3d 1200 (C.D. Cal. Mar. 27, 2014)................................................20

*Whitten v. ARS Nat'l Servs. Inc.*,
2001 WL 1143238 (N.D. Ill. Sept. 27, 2001) .................................................14

*Wood Dale Chiropractic, Ltd. v. DrFirst.com, Inc.*,
12-cv-780 (N.D. Ill.) .......................................................................................19

## STATUTES AND FEDERAL RULES

28 U.S.C. § 1715...................................................................................................12

47 U.S.C. § 227..................................................................................................1, 9

Fed. R. Civ. P. 23 ....................................................................................... *passim*

## MISCELLANEOUS

Manual for Complex Litigation
(4th ed. 2004) ................................................................................................12, 20

Alba Conte & Herbert B. Newberg, Newberg On Class Actions
(4th ed. 2001). ..........................................................................................13, 14, 18

Pursuant to Fed. R. Civ. P. 23, Plaintiff AL and PO Corporation ("Plaintiff"), by its counsel, respectfully submits the following Motion for Preliminary Approval of Proposed Class Settlement, and moves for an Order: (1) preliminarily approving the Agreement[1] as being fair, reasonable, and adequate; (2) preliminarily approving the form, manner, and content of the Notice and Claim Form; (3) setting the date and time of the Fairness Hearing for no earlier than 120 days from the date preliminary approval is granted; (4) provisionally certifying the Class under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only ("Class"); and (5) provisionally appointing Plaintiff as representative of the Class; and (6) provisionally appointing Joseph J. Siprut and Siprut PC as Class Counsel.

## I.    INTRODUCTION

Plaintiff and Defendant Quality Medical Products LLC ("QMP") have entered into a Settlement Agreement (the "Settlement Agreement" or "Settlement") in the above-referenced matter. (Exhibit 1 attached hereto.) The Settlement Agreement – a product of extensive negotiations – settles the dispute relating to Plaintiff's allegation that QMP sent advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

The relief achieved by the Settlement is an "all-in" common fund in the amount of **$650,000** – cash (the "Total Settlement Amount"). Under the terms of the Settlement Agreement, the Notice and Administration Payment, which covers notice and administrative expenses, shall not exceed $45,000. The Total Settlement Amount minus the Notice and Administration Payment will be referred to as the "Settlement Amount" and will be at least $605,000. Any amount of the Notice and Administration Payment not used for notice and administrative

---

[1] Unless otherwise stated herein, capitalized terms shall have the same meaning as provided in the Parties' Settlement Agreement, attached hereto as Exhibit 1.

expenses shall be added back to the Settlement Amount. The Settlement Amount shall be used to pay attorneys' fees and costs and an incentive award. The Settlement Amount minus the award for attorneys' fees and costs and the incentive award to the named plaintiff shall be shall be distributed *pro rata* to the Settlement Class Members (the "Class Fund"). If after payment of attorneys' fees, notice and administration expenses, and the incentive award, the remaining money in the Total Settlement Amount is $400,000, and if the number of class members submitting claim forms is equal to 10% of the unique fax numbers covered by the Settlement Class, then each Settlement Class Member would be entitled to $186.48 ($400,000 divided by 10% of the estimated 21,454 unique fax numbers covered by the class definition). Similarly, if 5% of Settlement Class Members submit valid claim forms, each Member would be entitled to a *pro rata* payment of $372.96. The $650,000 Total Settlement Amount represents the limit and extent of QMP's monetary obligations under this Agreement.

Although both sides believe their respective positions in the action are meritorious, they have concluded that, due to the uncertainties and expense of protracted litigation, it is in the best interest of Plaintiff, the putative settlement Class, and QMP to resolve this action on the terms provided in the attached Settlement Agreement.

## II.  PROCEDURAL HISTORY

A.  On February 19, 2014, Plaintiff filed its Class Action Complaint ("Complaint") against QMP in the United States District Court for the Northern District of Illinois. (Docket No. 1.) In the Complaint, Plaintiff asserted violations of the TCPA on behalf of itself and all individuals or entities who received facsimile advertisements sent from or on behalf of QMP. (*See generally* Docket No. 1.) Plaintiff filed its Motion for Class Certification concurrently with the Complaint. (Docket No. 3.)

-2-

B.      On March 14, QMP filed an agreed motion for an extension of time to file its response to the Complaint. (Docket No. 12.) Pursuant to the agreed-upon extension, QMP filed its Answer and Affirmative Defenses on April 8. (Docket No. 16.)

C.      On April 24, the Parties submitted a Joint Initial Status Report setting forth a proposed discovery schedule. (Docket No. 17.) The proposed discovery plan included issues concerning class discovery. (*Id.*) Neither party requested bifurcation of discovery. (*Id.*)

D.      On April 28, Plaintiff moved to strike QMP's Affirmative Defenses. (Docket No. 18.) This Court entered and continued Plaintiff's motion at the initial status hearing on April 29. (Docket No. 20.) At the initial status hearing, this Court ordered discovery to close on January 29, 2015. (*Id.*)[2] This Court did not bifurcate merits and class discovery. (*Id.*)

E.      On June 19, 2014, this Court denied Plaintiff's motion to strike without prejudice and ordered QMP to file its Amended Affirmative Defenses on or before July 3. (Docket No. 22.) On July 2, QMP filed its Amended Affirmative Defenses. (Docket No. 23.)

F.      On June 25, Plaintiff served upon QMP Plaintiff's First Set of Interrogatories and Document Requests. (*See* Docket Nos. 41, 53.) After Plaintiff agreed to two extensions, QMP provided its responses on August 15. (*See id.*) On September 4, QMP filed an agreed motion for a protective order, which this Court granted on September 5. (Docket Nos. 28-30.)

G.      On September 5, QMP reached out to Plaintiff with its first settlement demand. (*See* Affidavit of Joseph J. Siprut (the "Siprut Aff.), ¶11.) Throughout September and October 2014, Plaintiff and QMP exchanged several communications and settlement demands, in which they voluntarily exchanged information, discussed and exchanged viewpoints on the law, and

---

[2] This Court reinstated the January 29, 2015 deadline after it was inadvertently vacated. (Docket No. 34.)

had a number of specific conversations regarding QMP's specific defenses to liability and class certification. (*See id.*).

H.       On September 10, the Parties jointly moved for court assistance regarding stipulation of Plaintiff's motion for class certification. (Docket No. 32.) This Court denied that motion on September 16. (Docket No. 34.)

I.       On September 12, the Parties held a discovery conference pursuant to Local Rule 37.2. (*See* Docket Nos. 41, 53.) On September 15, QMP provided informal supplemental responses and its initial production. (*See id.*)

J.       The Parties jointly filed a stipulation on September 17, whereby QMP agreed not to attempt to "pick off" Plaintiff with a settlement offer after the Court dismissed without prejudice Plaintiff's motion for class certification. (Docket No. 35.) Pursuant to the stipulation, this Court dismissed without prejudice Plaintiff's motion for class certification on September 19. (Docket No. 36.)

K.       On October 1, the Parties held a second Rule 37.2 discovery conference. (*See* Docket Nos. 41, 53.) QMP provided supplemental responses and production on October 10. (*See id.*) On November 11, Plaintiff moved to compel QMP to participate in class discovery. (Docket No. 41.) QMP moved for an extension of time to complete discovery on November 13. (Docket No. 43.) On November 17, QMP moved to stay discovery pending a settlement conference before Magistrate Judge Susan E. Cox. (Docket No. 46.)

L.       On November 20, this Court entered and continued Plaintiff's motion to compel and QMP's motions for extension of time to complete discovery and to stay discovery. (Docket No. 49.) During which time, QMP would produce certain information regarding its

"Subcontractor Network." This Court denied all three of those motions as moot without prejudice on December 11. (Docket No. 50.)

      M.     On January 19, Plaintiff filed its renewed motion to compel QMP to participate in class discovery. (Docket No. 53.)[3] Plaintiff asserted that it had not received the requested information regarding the "Subcontractor Network." (*Id.*) QMP subsequently provided the information for Plaintiff's evaluation.

      N.     Following a conversation on January 22, the Parties engaged in extensive informal settlement negotiations. (*See* Siprut Aff. ¶18.) The Parties continued their negotiations thereafter, finally reaching agreement on all materials terms of the settlement in February 2014. (*See id.*).

      O.     On February 25, the Parties informed the Court that they had reached a settlement in principle. (Docket No. 58.) The Parties then spent several more weeks exchanging drafts of a final, written settlement agreement. (*See* Siprut Aff. ¶19.) After many exchanges of drafts and edits, the Parties were finally able to agree to the form and content of a settlement agreement in April 2015 that has now been fully executed and attached hereto.

## III.    THE PROPOSED SETTLEMENT

      The proposed Settlement provides the following:

### A.  Certification of the Proposed Class

      The Plaintiff requests that the Court, for the purposes of settlement, certify a Class defined as:

> All persons and entities: (a) who in 2013, were subscribers to a telephone number to which was sent one or more facsimiles ("Subcontractor Faxes") inviting recipients to contact QMP about its subcontractor network, which is used to service Medicare

---

[3] Plaintiff voluntary withdrew its renewed motion to compel on January 21. (Docket Nos. 55, 56.)

members receiving CPAP and BiPAP equipment, or who in 2013 were the owners of a facsimile machine to which a Subcontractor Fax was sent; (b) who in 2013 were subscribers to a telephone number listed on one or both of the two spreadsheets QMP created for purposes of sending the Subcontractor Faxes; (c) who were recipients of a Subcontractor Fax; *or* (d) in 2013, who had a registration with the National Provider Identifier ("NPI") Registry that included a telephone number described in (a) or (b) above.

Excluded from the Class are QMP, any parent, subsidiary, affiliate or controlled person of QMP, as well as the officers, directors, agents, servants or employees of QMP and the immediate family members of such persons, and members of the judiciary.

**B. Class Relief**

The Settlement establishes the following relief for Class members:

- **Payments Available to All Class Members.** Within sixty (60) days of the date that Notice is sent by fax, Settlement Class Members must submit a claim form to the Settlement Class Administrator by fax or mail. Each Settlement Class Member who submits a timely and valid claim form shall be entitled to a check for cash payment equal to a *pro rata* share of the Class Fund.

- **Undistributed Funds**. Within thirty (30) days following the last void date of the checks issued to Settlement Class Members for payment of claims, the Settlement Class Administrator will report to the Parties if there are any uncashed checks or unclaimed or undistributed money from the Class Funds. In the event that there are undistributed funds after all payments required under the Settlement Agreement are made, the Parties may make proposals to the Court for equal distribution of such remaining funds to a *cy pres* recipient

- **No Reversion.** Under no circumstances shall any amounts of the fund revert back to QMP.

The Settlement is thus designed to afford relief to as many Class members as possible.

**C. Class Notice**

Subject to the Court granting Preliminary Approval of the Settlement and Settlement Agreement, the Settlement Class Administrator will provide the Class with notice of the proposed Settlement by the following methods.

- **Facsimile Notice:** Within thirty-five (35) days after entry of the Preliminary Approval Order, the Settlement Administrator will cause actual notice of this settlement, in the form of Appendix 1 to the Settlement Agreement, to be sent to the unique telephone numbers on the Subcontractor Spreadsheets (collectively, the two spreadsheets will be referred to as the "Class List"). Those numbers are the facsimile telephone numbers that QMP obtained from the NPI Registry for purposes of sending the Subcontractor Faxes in July and August 2013 to the Settlement Class members. The Class List will be produced pursuant to Fed. R. Civ. P. 26(c) and is Confidential under the Agreed Confidentiality Order (Docket No. 31). The Settlement Administrator shall resend Notice to those numbers where the transmission failed. The Settlement Administrator shall make at least two attempts to transmit the Notice by facsimile where the initial transmission failed.

- **Internet Posting on Class Counsel's Websites:** Class Counsel also agree that they will post the complete text of this Agreement on their website, www.qmpfaxsettlement.siprut.com within thirty-five (35) days of entry of the Preliminary Approval Order until ninety (90) days after the last claim check is issued. The full Agreement will also be made available to any Class member requesting additional information.

In order to receive one of the benefits described above and become part of the class member payment list, the class member must submit a Claim Form (attached as Appendix 1 to the Settlement Agreement) that is (1) timely, and (2) valid as determined by the Notice and Claims Administrator.

### D. Incentive Award to Class Representative

Subject to Court approval, the Plaintiff-Class Representative will request a service award of $5,000 in recognition of its contributions to the Class and the risk it incurred in commencing the action, both financial and otherwise.

### E. Attorneys' Fees and Expenses

Class Counsel will request total fees and expenses not to exceed one-third of the Settlement Amount, less the incentive award to Plaintiff. As indicated in the Notice, Class Counsel estimates its request for fees and expenses will be in the amount of $199,998. The Court does <u>not</u> need to award or otherwise rule on Class Counsel's fees at this time. Class Counsel will

file a motion for attorneys' fees separately, pursuant to the schedule in the Preliminary Approval Order, and will support the unopposed request for fees in detail.

## IV.   THE PROPOSED SETTLEMENT IS FAIR AND SHOULD BE PRELIMINARILY APPROVED.

### A.   The Proposed Settlement Satisfies The Fairness Criteria.

Both judicial and public policies strongly favor the settlement of class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1198 (7th Cir. 1996). Although the standards to be applied at the preliminary approval stage "are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase." *Kessler v. Am. Resorts Int'l*, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong v. Board of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980)). The factors considered at this stage include: (i) the strength of the plaintiff's case compared to the amount of the settlement; (ii) an assessment of the likely complexity of trial; (iii) the length and expense of the litigation; (iv) the amount of opposition to settlement among affected parties; (v) the opinion of counsel; and (vi) the stage of the proceedings and amount of discovery completed. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 578 (N.D. Ill. 2011) *citing Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)).

### 1.   Strength of the Case

Plaintiff alleges that QMP violated the TCPA by sending fax advertisements to unwilling recipients. Plaintiff contends that QMP did so without prior express consent and without any established business relationship. The Complaint thus alleges that Plaintiff and the Class are entitled to statutory and actual damages, injunctive relief, and other equitable relief this Court deems appropriate.

QMP denies liability and contends that it has a number of affirmative defenses that would defeat Plaintiff's claim on both substantive and procedural grounds. For instance, QMP contends that the faxes it sent were not advertisements within the meaning of the TCPA. (Docket No. 23 at ¶ 1.) If QMP was successful on this basis alone, its conduct would not be a violation of the TCPA. *See* 47 U.S.C. § 227(a)(5) (defining advertisement as "any material advertising the commercial availability or quality of any property, goods, or services").[4] QMP has also asserted that Plaintiff and the members of the Class consented to receive the faxes by providing their fax numbers while registering with the NPI Registry, which may result in individualized issues barring class certification. Clearly, one of the factors to be considered as to the fairness of a class action settlement is a defendant's willingness and ability to mount just such a vigorous defense.

"The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014); *Synfuel*, 463 F.3d at 653. In doing so, however, "courts should refrain from resolving the merits of the controversy or making

---

[4] *See also Physician's Healthsource, Inc. v. MulitPlan Servs. Corp.*, 2013 WL 5299134, at *2 (D. Mass. Sept. 18, 2013) ("Based on the four corners of the facsimile, there is no overt advertising . . . nor is there any enticement that could be construed as pretext to advertise commercial products or services."); *Friedman v. Torchmark Corp.*, 2013 WL 1629084, *4 (S.D. Cal. Apr. 16, 2013) ("Defendant's message was not aimed at encouraging Plaintiff to engage in future commercial transaction with Defendant to purchase its goods. Rather, Defendant's message informed Plaintiff about a recruiting webinar that could have resulted in an opportunity to sell Defendant's goods, which is akin to an offer of employment."); *Phillips Randolph Enterprises, LLC v. Adler-Weiner Research Chicago, Inc.*, 526 F. Supp. 2d 851, 852-53 (N.D. Ill. 2007) (fax inviting business owners to participate in research discussion on new healthcare program sponsored by chamber of commerce was not advertisement; although plaintiff compared fax to pre-textual notification about free seminar where sender's products were promoted, fax was not "indiscriminate, open ended invitation" to do business with defendant but instead indicated that individuals interested in participating in research study must be qualified and would be subject to pre-screening); *NB. Indus. v. Wells Fargo & Co.*, 2010 WL 4939970 (N.D. Cal. Nov. 30, 2010) (faxes containing information and application relating to Asian-American business leadership award and banquet that were sponsored by sender were not advertisements because they did not mention defendant's products); *Lutz Appellate Servs., Inc. v. Curry*, 859 F. Supp. 180, 181 (E.D. Pa.1994) (fax about job openings at sender was not an advertisement).

a precise determination of the parties' respective legal rights." *In re AT&T Mobility Wireless Data Services Sales Litig*., 270 F.R.D. 330, 346 (N.D. Ill. 2010) (internal quotations omitted). Moreover, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *Id*. (internal quotations omitted). Rather, an integral part of the Court's strength-versus-merits evaluation "is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985).

As explained above, the Settlement allows Class members to receive monetary, in-kind, and prospective relief. While Plaintiff believes that its claim for maximum statutory damages under the TCPA is strong, Plaintiff is also aware of the inherent risks and costs of continuing with complex litigation of this nature. If QMP were to prevail on its asserted defenses, Class members, including Plaintiff, would receive no relief *at all*. Given this possibility, a *pro rata* distribution of the Class Fund is a meaningful achievement. Accordingly, the Settlement provides a tangible benefit to all those affected by QMP's alleged violation of the TCPA.

### 2. Risk, Expense, & Complexity of Case

Due to the nature of Plaintiff's case, trial will require the collection of evidence and witness testimony from across the country. Both Parties would examine a number of QMP's current and former employees. QMP intends to assert a number of affirmative defenses that it contends bar Plaintiff's claim in whole or in part. QMP would present – and Plaintiff would necessarily attempt to rebut – evidence and testimony on whether individual Class members provided prior express consent to or had an existing business relationship with QMP. The uncertainty as to whether these affirmative defenses apply in this case creates substantial risk for both sides. Plaintiff and proposed Class Counsel also recognize that the expense, duration, and complexity of protracted litigation would be substantial, and would require further briefing on

-10-

numerous substantive issues, evidentiary hearings, and further discovery and the gathering of evidence and witnesses.

### 3. The Opinion of Counsel

"The opinion of competent counsel is relevant to the question whether a settlement is fair, reasonable, and adequate under Rule 23." *Schulte*, 805 F. Supp. 2d at 586-87. Here, Class Counsel has extensive experience in consumer class actions and complex litigation. (*See* Siprut Aff. ¶22.) Based upon proposed Class Counsel's analysis and the information obtained from QMP, a *pro rata* share of the Class Fund represents a significant recovery for the Settlement Class, especially when weighed against QMP's anticipated defenses and the inherent risks of litigation. Class Counsel believes that the Settlement is beneficial to the Class and meets the class-certification requirements of Rule 23.

### 4. Extent of Discovery

Based upon information exchanged by the Parties, Plaintiff believes it possesses the evidence needed to evaluate the strengths and weaknesses of the case. QMP has provided Plaintiff with information relating to the nature of the Subcontractor Program described in the faxes and empirical data concerning the number of faxes sent and received. As such, counsel for each party has sufficient information to assess the strengths, weaknesses, and likely expense of taking this case to trial.

While the Parties have both formally and informally exchanged information critical to evaluating the strength of Plaintiff's contentions (and QMP's defenses), the amount of discovery taken is not a prerequisite to a class action settlement. Courts have noted that, "the label of 'discovery' [either formal or informal] is not what matters. Instead, the pertinent inquiry is what facts and information have been provided." *Schulte*, 805 F. Supp. 2d at 587 (internal citation omitted). *See also in re Corrugated Container Antitrust Litigation,* 643 F.2d 195, 211 (5th Cir.

1981) ("It is true that very little formal discovery was conducted and that there is no voluminous record in the case. However, the lack of such does not compel the conclusion that insufficient discovery was conducted.") (emphasis omitted). Here, information more than sufficient to make a reasonable and informed decision has been procured, meaning that there was a reasonable, informed basis to evaluate the Settlement.

### 5. Presence of Governmental Participants

Although there is no governmental entity participating in this matter as of this time, full and complete notice is being provided to all appropriate state and federal authorities. QMP will provide such notice which will include all appropriate information and documents required by the Class Action Fairness Act, 28 U.S.C. § 1715(b).

## V. THE SETTLEMENT CLASS SHOULD BE PROVISIONALLY CERTIFIED; THE FORM AND METHOD OF NOTICE TO THE CLASS MEMBERS SHOULD BE APPROVED; AND, A HEARING REGARDING FINAL APPROVAL OF THE SETTLEMENT SHOULD BE SCHEDULED.

### A. The Class Should be Provisionally Certified.

Before preliminary approval of a class action settlement can be granted, the Court must determine that the proposed class is appropriate for certification. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.632. Federal Rule of Civil Procedure 23(a) provides that a class may be certified if (i) the class is so numerous that joinder of all members is impractical, (ii) there are questions of law or fact common to the class, (iii) the claims or defenses of the representative parties are typical of those of the class, and (iv) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *Williams v. Chartwell Fin. Serv., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000).

Once the requirements of Rule 23(a) have been met, the proposed class must then satisfy at least one of the three subsections of Rule 23(b). *Amchem*, 521 U.S. at 614. In this case,

Plaintiff seeks certification of the Class under Rule 23(b)(3), which requires that (i) the questions of law or fact common to all class members predominate over issues affecting only individual members, and (ii) the maintenance of a class action be superior to other available methods for the fair and efficient adjudication of the controversy. *Id.* at 615; *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).

As discussed further below, the proposed Class meets each of the requirements of Rules 23(a) and (b), and therefore, certification is appropriate.[5]

### 1. Numerosity — Federal Rule of Civil Procedure 23(a).

Rule 23(a)'s first requirement, numerosity, is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). To satisfy this requirement there is no specific number required, nor is a plaintiff required to state the exact number of potential class members. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006). *See also* 3 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 7.20, 66 (4th ed. 2001). Instead, courts are permitted "to make common-sense assumptions that support a finding of numerosity." *Maxwell v. Arrow Fin. Servs., LLC*, 2004 WL 719278, at *2 (N.D. Ill. March 31, 2004). Generally, where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met. *Pope v. Harvard Banchares, Inc.*, 240 F.R.D. 383, 387 (N.D. Ill. 2006).

In this case, QMP downloaded from the National Provider Index Registry a total of 21,454 unique fax numbers in connection with its transmission of the subject faxes. Although QMP denies that it sent Subcontractor Faxes to all of these numbers, all such numbers will be included in the Class Definition. (*See* Siprut Aff. ¶21.) Accordingly, the Class satisfies the

---

[5] As detailed in the Settlement Agreement, QMP does not oppose the request for class certification solely for the purposes of settlement.

numerosity requirement. *See* NEWBERG ON CLASS ACTIONS § 3:5, 243-46 (4th ed. 2002) ("Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands. . . In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met.").

**2.    Commonality/Predominance — Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**

The commonality element requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts recognize that there may be factual differences between class members, but "factual variations among class members' claims" do not themselves "defeat the certification of a class." *Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980), *cert. denied*, 451 U.S. 914 (1980); *Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir. 1992), *cert. denied*, 506 U.S. 1051 (1993). In fact, the threshold for commonality is not high. *Scholes v. Stone, McGuire, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992). Rather, commonality exists if a common nucleus of operative fact exists, even if as to one question of law or fact. *Whitten v. ARS Nat'l Servs. Inc.*, 2001 WL 1143238, *3 (N.D. Ill. Sept. 27, 2001) (commonality is often found where "Defendants have engaged in standardized conduct toward the members of the proposed class."). *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011) (stating that "commonality requires that the claims of the class simply "depend upon a common contention . . . of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."). "Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013), *reh'g denied* (Sept. 24, 2013), *cert. denied,* 134 S. Ct. 1318, 188 L. Ed. 2d 306 (U.S. 2014).

As alleged in Plaintiff's Complaint, the Class shares common questions of fact and law that predominate over issues affecting only individual members of the Class. Those common factual and legal issues for the Class include:

    a. Whether QMP engaged in a pattern of sending unsolicited facsimile advertisements;

    b. Whether QMP sent, or caused to be sent, the facsimiles at issue;

    c. The manner in which QMP compiled or obtained their list of facsimile numbers; and

    d. Whether QMP thereby violated the TCPA.

Additionally, Rule 23(b)(3) provides that a class action may be maintained where the questions of law and fact common to members of the proposed class predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3); *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 331-32 (N.D. Ill. 2006). "Predominance . . . is a question of efficiency." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013). A class action is the more efficient procedure for determining liability and damages in a case such as this, involving a defect that may have imposed costs on tens of thousands of consumers yet not a cost to any one of them large enough to justify the expense of an individual suit. *Id.* In this case, common questions predominate for the Class because QMP's alleged unlawful conduct presents common questions with regard to all members of the proposed Class. Thus, in the context of the proposed class-wide settlement the predominance requirement is satisfied because liability and damages would have been decided predominantly, if not entirely, based on common evidence of QMP's conduct.

-15-

### 3. Typicality — Federal Rule of Civil Procedure 23(a)(3).

Rule 23 also requires that a plaintiff's claims be typical of other class members' claims. Fed. R. Civ. P. 23(a)(3). The typicality requirement is closely related to the commonality requirement and is satisfied if the plaintiff's claims arise from "the same event or practice or course of conduct that gives rise to the claims of other class members and…are based on the same legal theory." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotations omitted). The existence of factual differences will not preclude a finding of typicality. *Id.* "Typicality does not mean identical, and the typicality requirement is liberally construed." *In re Neopharm, Inc. Securities Litigation*, 225 F.R.D. 563, 566 (N.D. Ill. 2004) (citation omitted).

Here, Plaintiff and the Class all received faxes regarding QMP's Subcontractor Program, and alleged that QMP sent or had sent on its behalf the faxes in violation of the TCPA, thereby entitling Plaintiff and the Class to actual, or statutory damages, and equitable relief. Moreover, there are no defenses that pertain to Plaintiff that would not also pertain to the Class. Accordingly, Plaintiff's claims are typical of the other Class members' claims.

### 4. Adequacy of Representation — Federal Rule of Civil Procedure 23(a)(4).

The final Rule 23(a) prerequisite requires that a proposed class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy the adequacy requirement, class representatives must establish that: (i) their claims are not in conflict with those of the proposed class, (ii) they have sufficient interests in the outcome of the case, and (iii) they are represented by experienced, competent counsel. *Hinman v. M and M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008). Furthermore, proposed class counsel must be competent and have the resources necessary to sustain the complex litigation necessitated by

-16-

class claims; it is persuasive evidence that proposed class counsel have been found adequate in prior cases. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987).

Here, Plaintiff's interests are consonant with the interests of the Class – obtaining relief from QMP for its marketing of its products by facsimile transmissions, and ensuring that QMP does not continue such conduct in the future. Plaintiff has no interests antagonistic to the interests of the other Class members. (*See* Siprut Aff. ¶23.) Moreover, Plaintiff's counsel are well respected members of the legal community, have regularly engaged in major complex litigation, and have significant experience in consumer class actions involving similar issues, scope, and complexity. (*See id.* ¶22; Siprut Firm Resume (attached as Exhibit A to the Siprut Affidavit).) Accordingly, Plaintiff and its counsel would adequately represent the proposed Class.

### 5. Superiority — Federal Rule of Civil Procedure 23(b)(3).

In addition to satisfying Rule 23(a), a plaintiff seeking certification must satisfy one of the provisions of Rule 23(b). Rule 23(b)(3) provides that matters pertinent to a finding of superiority include: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3). When settling a class action, Plaintiff does not have to prove manageability under Rule 23(b)(3) as if the case were being fully litigated because settlement may "eliminate all the thorny issues that the court would have to resolve if the parties fought out the case." *Carnegie v.*

*Household International, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004) (citing *Amchem*, 521 U.S. at 117)).

The present class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's and the Class' claims. The burden and expense of individual prosecution of the litigation necessitated by QMP's actions makes a class action superior to other available methods of resolution. Thus, absent a class action, it would be difficult, if not impossible, for individual members of the Class to obtain effective relief.

**B.     The Form and Method of Service of Class Notice Should Be Approved.**

"When the parties reach a settlement agreement before a class determination and seek to stipulate that the settlement will have class wide scope, a class notice must be sent to provide absent class members with certain basic information so that they have an opportunity to consider the terms of the settlement." 2 NEWBERG, section 11.30, p. 11-62-11-63. The substance of the notice must describe, in plain language, the nature of the action, the definition of the certified class, and the class claims and defenses at issue. *See* Fed. R. Civ. P. 23(c)(2)(B). The notice must also explain that class members may enter an appearance through counsel if desired, may request to be excluded from the class, and that a class judgment shall have a binding effect on all class members. *Id*. Additionally, dissemination of the notice must comport with both Rule 23 and due process, which require that a class receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The proposed notice plan in this case satisfies Rule 23's notice requirements as well as due process considerations, and provides:

1.     A brief summary of the claims alleged in the action;

-18-

2.      An explanation of the proposed terms of the Settlement, the amount the Class members are entitled to receive under the Settlement Agreement, and the method by which Class members can claim their Settlement benefit;

3.      An explanation of the right to opt out of and/or object to the Settlement within given time-frames and subject to certain requirements;

4.      An explanation that members of the Class who do not opt out will be bound by the proposed Settlement and judgment and will have released their claims;

5.      An explanation that members of the Class who do not opt out will be represented by proposed Class Counsel; and

6.      An identification of Class Counsel and a means for making inquiries thereof.

Federal courts authorize service of class notice by a variety of reliable means. In this regard, "[t]here is no statutory or due process requirement that all class members receive actual notice by mail or other means; rather, 'individual notice must be provided to those Class members who are identifiable through reasonable effort.'" *Eisen,* 417 U.S. at 175-76.

In this case, the Settlement provides for direct notice via facsimile to each of the 21,454 unique fax numbers identified by QMP. This notice method is reasonably calculated to reach the Settlement Class Members by the best means practicable and should be approved. *See, e.g.*, *C.E. Design, Ltd. v. King Supply Co., LLC*, 2012 WL 2976909, at *3 (N.D. Ill. July 20, 2012) (approving notice via facsimile); *Wood Dale Chiropractic, Ltd. v. DrFirst.com, Inc.*, 12-cv-780 (N.D. Ill.) (Docket No. 73) (fax and publication notice); *Able Home Health, LLC and Dr. G. Neil Garrett DDS, PC v. Globe Med.-Surgical Supply Co.*, 12-cv-5608 (N.D. Ill.) (Docket No. 90) (fax notice); *Dr. William P. Gress v. Northwood, Inc.*, 12-cv-7278 (N.D. Ill.) (Docket No. 38) (fax and mail notice); *Able Home Health, LLC v. Healthy Advice Commc'ns., Inc.*, 12-cv-3019

(N.D. Ill.) (Docket No. 60) (fax and mail notice); *Richard Wade Architects, P.C. v. Eng'g. Servs. and Prods. Co.*, 11-cv-9251 (N.D. Ill.) (Docket No. 58) (fax notice); *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, 2014 WL 413533, at *1-2 (D.N.J. Feb. 3, 2014) (fax notice); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1204-05 (C.D. Cal. Mar. 27, 2014) (fax notice); *A & L Indus., Inc. v. P. Cipollini, Inc.*, 2014 WL 906180, at *1 (D.N.J. Mar. 7, 2014)(rejecting arguments that notice had to be served in accordance with Rule 5(b); "Rule 23(c) should supersede because Rule 23(c) addresses class notice specifically, whereas Rule 5 addresses service generally.").

### C. The Court Should Schedule A Hearing For Final Settlement Approval.

Following notice to the Class, a Fairness Hearing is to be held on the proposed Settlement. MANUAL FOR COMPLEX LITIGATION, § 21.633. Accordingly, Plaintiff, by proposed Class Counsel, respectfully requests that the Court schedule a hearing on final approval of the Settlement to be held no earlier than 120 Days after entry of the Preliminary Approval Order. The hearing on the final settlement approval should be scheduled now so that the date can be disclosed in the class notice. After receiving final approval, the Parties request that the Court enter a Final Approval Order.

## VI. CONCLUSION

Based upon the foregoing, and because the proposed Settlement is fair, reasonable, and advantageous to the proposed Class, Plaintiff respectfully requests that the Court enter an Order:

A. Preliminarily approving the Settlement as being fair, reasonable, and adequate;

B. Preliminarily approving the Claim Form and Class Notice attached as Appendix 1 to the Settlement Agreement;

C. Setting the date and time of the Fairness Hearing to be held no earlier than 120 Days after entry of the Preliminary Approval Order;

D.      Provisionally certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only;

E.      Appointing Plaintiff as Class representative;

F.      Appointing Joseph J. Siprut and Siprut PC as Class Counsel; and

G.      Such other and further relief the Court deems just and proper.

(A copy of the proposed preliminary approval order is attached hereto as Exhibit 2.)

Dated: May 28, 2015                              Respectfully submitted,

                                                 By:  *s/ Joseph J. Siprut*

                                                 Joseph J. Siprut
                                                 *jsiprut@siprut.com*
                                                 Ismael T. Salam
                                                 *isalam@siprut.com*
                                                 **SIPRUT** PC
                                                 17 North State Street
                                                 Suite 1600
                                                 Chicago, Illinois 60602
                                                 312.236.0000
                                                 Fax: 312.241.1260

                                                 ***Counsel for Plaintiff***
                                                 ***and the Settlement Class***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiff's Motion for Preliminary Approval of Class Action Settlement** was filed this 28th day of May, 2015, via the electronic filing system of the United States District Court for the Northern District of Illinois, which will automatically serve all counsel of record.


_____
*s/ Joseph J. Siprut*



4824-2857-3474, v. 2