## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| AL AND PO CORPORATION, ) <br> individually and on behalf of all others ) <br> similarly situated, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> QUALITY MEDICAL PRODUCTS, LLC, ) <br> a Florida limited liability company, ) <br> ) <br> Defendant. ) | Case No. 14-cv-1243 <br><br> Hon. Thomas M. Durkin |

## PLAINTIFF'S MOTION FOR
## ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD

Submitted by:

Joseph J. Siprut
*jsiprut@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
**SIPRUT** PC
17 N. State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.241.1260
www.siprut.com

*Counsel for Plaintiff and the Settlement Class*

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................1

II. PROCEDURAL HISTORY..................................................................................2

III. CLASS COUNSEL'S FEE REQUEST ................................................................5

    A. Class Counsel Performed Substantial Work on Behalf of the Class .......................5

    B. The Percentage Of The Recovery Method Is Preferred In Determining Attorneys' Fee Awards ................................................................................................7

        1. The Requested Fees Represent 33.33% Of The Common Benefit Provided To The Class—Is Consistent With The Market And The Range Found Reasonable By The Courts................................................................................8

    C. The Requested Fees Are Also Appropriate Under The Lodestar Method.............10

IV. THE REQUESTED INCENTIVE AWARD TO THE REPRESENTATIVE PLAINTIFF IS PROPER.............................................................................13

V. CONCLUSION...................................................................................................14

# **TABLE OF AUTHORITIES**

**UNITED STATES SUPREME COURT CASES**

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1983)..................................................................................................................7

*Fox v. Vice*,
131 S. Ct. 2205 (2011)............................................................................................................11

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)................................................................................................................10

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

*Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*,
743 F.3d 243 (7th Cir. 2014) ..................................................................................................10

*Anderson v. AB Painting & Sandblasting, Inc.*,
578 F.3d 542 (7th Cir. 2009) ....................................................................................................9

*Connolly v. Nat'l Sch. Bus. Serv., Inc.*,
177 F.3d 593 (7th Cir.1999) ...................................................................................................12

*Cook v. Niedert,*
142 F.3d 1004 (7th Cir. 1998) ..........................................................................................11, 12

*Gaskill v. Gordon*,
160 F.3d 361 (7th Cir. 1998) ....................................................................................................7

*Gastineau v. Wright,*
592 F.3d 747 (7th Cir. 2010) ..................................................................................................11

*Harman v. Lyphomed, Inc.*,
945 F.2d 969 (7th Cir. 1991) ..................................................................................................12

*In re Sw. Airlines Voucher Litig.*,
No. 13-3264, 2015 WL 4939676 (7th Cir. Aug. 20, 2015) ......................................................9

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) ....................................................................................................8

*Johnston v. Comerica Mortg. Corp.,*
83 F. 3d 241 (8th Cir. 1996) .....................................................................................................9

*Kirchoff v. Flynn*,
786 F.2d 320 (7th Cir. 1986) ....................................................................................................8

*Matter of Cont'l Illinois Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ..................................................................................................7, 9

*Montgomery v. Aetna Plywood, Inc.*,
231 F.3d 399 (7th Cir. 2000) ..........................................................................................................8

*Pearson v. NBTY, Inc.*,
772 F.3d 778 (7th Cir. 2014) ..........................................................................................................9

*Redman v. RadioShack Corp.*,
768 F.3d 622 (7th Cir. 2014) ..........................................................................................................9

*Skelton v. Gen. Motors Corp.*,
860 F.2d 250 (7th Cir. 1988) ........................................................................................................11

*Sutton v. Bernard*,
504 F.3d 688 (7th Cir. 2007) ..........................................................................................................8

*In re Sw. Airlines Voucher Litig.*,
No. 13-3264, 2015 WL 4939676 (7th Cir. Aug. 20, 2015) ............................................................7

## UNITED STATES DISTRICT COURT CASES

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*,
00-584-DRH, 2004 WL 287902 (S.D. Ill. Jan. 22, 2004) ................................................................8

*Chapa IV v. Trugreen, Inc.*,
No. 13-cv-3957, Dkt. No. 50 (N.D. Ill. Jan. 27, 2015) ....................................................................9

*In re Bayou Sorrel Class Action*,
6:04-cv-1101, 2006 WL 3230771 (W.D. La. Oct. 31, 2006) ..........................................................7

*In re Brand Name Prescription Drugs Antitrust Litig.*,
2000 WL 204112 (N.D. Ill. Feb. 9, 2000) ....................................................................................12

*In re Cenco, Inc. Sec. Litig.*,
519 F. Supp. 322 (N.D. Ill. 1981) ...........................................................................................11, 12

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005) ....................................................................................................13

*In re Sw. Airlines Voucher Litig.*,
2013 WL 5497275 (N.D. Ill. Oct. 3, 2013) ..................................................................................13

*Martin v. Dun & Bradstreet, Inc.*,
No. 12-cv-00215, Dkt. 66 (N.D. Ill. Jan. 16, 2014) ........................................................................9

*Meyenburg v. Exxon Mobil Corp.*,
3:05-cv-15-DGW, 2006 WL 2191422 (S.D. Ill. July 31, 2006) ........................................................9

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
97-cv-7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ..............................................................8

*Spicer v. Chi. Bd. Options Exch., Inc.*,
844 F. Supp. 1226 (N.D. Ill. 1993) ...............................................................................................12

*Summers v. UAL Corp. ESOP Comm.*,
03-cv-1537, 2005 WL 3159450 (N.D. Ill. Nov. 22, 2005) .............................................................8

*Trustees of the Michiana Area Electrical Works Health & Welfare Fund v. TGB Unlimited, Inc.*,
2:13-CV-199-JEM, 2015 WL 1865561 (N.D. Ind. April 22, 2015) ...............................................9

*Vista Healthplan, Inc. v. Warner Holdings Co. III,*
246 F.R.D. 349 (D.D.C. 2007) ........................................................................................................9

*Will v. Gen. Dynamics Corp.*,
06-698-GPM, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ..........................................................8

**STATUTES AND FEDERAL RULES**

47 U.S.C. § 227 ..................................................................................................................... *passim*

**MISCELLANEOUS**

Richard Posner, *Economic Analysis of Law* § 21.9 (3d ed. 1986) ...................................................8

Willging, Hooper & Niemic, *Empirical Study of Class Actions in Four Federal District Courts:
Final Report to the Advisory Committee on Civil Rules* (Fed. Judicial Center 1996) ......................9

Pursuant to Fed. R. Civ. P. 23 and this Court's June 3, 2015 Preliminary Approval Order (Dkt. No. 66), Plaintiff AL And PO Corporation ("Plaintiff"), by its counsel, respectfully submits the following Motion for Attorneys' Fees, Costs, and Incentive Award.

## I. INTRODUCTION

The Settlement Fund achieved through Class Counsel's efforts is $650,000. Class Counsel seeks the Court's approval of an award for attorneys' fees and costs in the amount of 1/3 of the Settlement Amount,[1] plus an incentive award of $5,000 to Plaintiff. The award sought is reasonable and appropriate, as Class Counsel litigated this matter without any compensation from the investigation stages all the way through class-wide resolution on behalf of the Class, and obtained a settlement that provides substantial relief to the Class members. Fee awards in the amount of 1/3 (or 33.33%) of a settlement fund is also within the Seventh Circuit's presumptive standards, where awards are often as high as 40% of the fund.

Class Counsel's base lodestar time is $237,048 (including the estimated time to achieve final approval of the Settlement) and costs to date are $1,316.26, (Affidavit of Joseph J. Siprut ("Siprut Aff."), attached hereto as Exhibit 1, ¶¶29-30.) Counsel has nonetheless agreed to a negotiated resolution on fees in the amount of 1/3 of the Settlement Amount or approximately $208,333.33. Thus, not only does Counsel not ask the Court to utilize a multiplier enhancement to approve the negotiated fees, Counsel would be receiving a *negative multiplier* based on its lodestar.

In sum, and as demonstrated below, Class Counsel's requested fee award:

- Is the result of negotiation and compromise with Defendant Quality Medical Products, LLC ("QMP"); and

---

[1] The Settlement Amount is balance of the Settlement Fund after settlement and administrative costs have been deducted. Because those costs have not been finalized, Plaintiffs' Counsel cannot provide a precise value of their proposed fee award at this time. Nevertheless, the Settlement Administrator estimates that final costs will be approximately $25,000.

-1-

- Falls well within the range of attorneys' fees and expenses awarded by courts within the Seventh Circuit using the lodestar/multiplier methodology.

## II.   PROCEDURAL HISTORY

On February 19, 2014, Plaintiff filed a class action complaint ("Complaint") against American Registry in the United States District Court for the Northern District of Illinois. (Dkt. No. 1.) On behalf of itself and a proposed class of all individuals or entities in the United States who were sent facsimile advertisements from or on behalf of Quality Medical Products, LLC ("QMP"), Plaintiff alleged that QMP sent (or had sent on its behalf) facsimile advertisements to unwilling recipients with deficient opt-out notices in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). (*See generally* Dkt. No. 1.)

On February 24, 2014, this Court set an initial status hearing for April 29, 2014. (Dkt. No. 9.) After receiving service of process, QMP moved for an extension of time to answer or otherwise plead until and through April 8, 2014. (Dkt. No. 12.) This Court granted QMP's motion for extension of time. (Dkt. No. 14.)

On April 8, 2014, QMP filed its answer to the Plaintiff's Complaint, denying the substance of the allegations and raising several affirmative defenses, including, but not limited to, Plaintiff failed to state a claim upon which relief can be granted, Plaintiff lacked standing, and Plaintiff consented to receive the faxes at issue in this case. (Dkt. No. 16.)

On April 24, the Parties submitted a Joint Initial Status Report setting forth a proposed discovery schedule. (Dkt. No. 17.) The proposed discovery plan included issues concerning class discovery. (*Id.*) Neither party requested bifurcation of discovery. (*Id.*)

On April 28, 2014, Plaintiff moved to strike QMP's answer and affirmative defenses. (Dkt. No. 18.) Subject to an agreement by the parties, Plaintiff's motion was denied without prejudice on June 19, 2014, and QMP was required to file an amended answer on or before July

13, 2014. (Dkt. No. 22.) A new status hearing was set for February 4, 2015, which was later continued. (*Id*.) On June 2, 2014, QMP filed its amended answer and affirmative defenses. (Dkt. No. 23.)

On June 25, 2014, Plaintiff served its initial disclosures. (Siprut Aff. ¶8.) That same day, Plaintiff also served its first set of requests for admission, requests for production, and interrogatories. (*See* Dkt. Nos. 41, 53.) After Plaintiff agreed to two extensions, QMP provided its responses on August 15. (*See id.*) On September 4, QMP filed an agreed motion for a protective order, which this Court granted on September 5. (Dkt. Nos. 28-30.)

On September 5, 2014, QMP reached out to Plaintiff with its first settlement demand. (Siprut Aff. ¶9.) Throughout September and October 2014, Plaintiff and QMP exchanged several communications and settlement demands, in which they voluntarily exchanged information, discussed and exchanged viewpoints on the law, and had a number of specific conversations regarding QMP's specific defenses to liability and class certification. (*See id.*).

On September 10, 2014 the Parties jointly moved for court assistance regarding stipulation of Plaintiff's motion for class certification. (Dkt. No. 32.) This Court denied that motion on September 16. (Dkt. No. 34.)

On September 10, 2014, the Parties jointly moved for court assistance regarding stipulation of Plaintiff's motion for class certification. (Dkt. No. 32.) This Court denied that motion on September 16. (Dkt. No. 34.)

On September 12, 2014 the Parties held a discovery conference pursuant to Local Rule 37.2. (*See* Dkt. Nos. 41, 53.) On September 15, QMP provided informal supplemental responses and its initial production. (*See id.*)

The Parties jointly filed a stipulation on September 17, 2014 whereby QMP agreed not to attempt to "pick off" Plaintiff with a settlement offer after the Court dismissed without prejudice Plaintiff's motion for class certification. (Dkt. No. 35.) Pursuant to the stipulation, this Court dismissed without prejudice Plaintiff's motion for class certification on September 19. (Dkt. No. 36.)

On October 1, 2014 the Parties held a second Rule 37.2 discovery conference. (*See* Dkt Nos. 41, 53.) QMP provided supplemental responses and production on October 10. (*See id.*) On November 11, Plaintiff moved to compel QMP to participate in class discovery. (Dkt. No. 41.) QMP moved for an extension of time to complete discovery on November 13. (Dkt. No. 43.) On November 17, QMP moved to stay discovery pending a settlement conference before Magistrate Judge Susan E. Cox. (Dkt. No. 46.)

On November 20, 2014 this Court entered and continued Plaintiff's motion to compel and QMP's motions for extension of time to complete discovery and to stay discovery. (Dkt. No. 49.) During which time, QMP would produce certain information regarding its "Subcontractor Network." This Court denied all three of those motions as moot without prejudice on December 11. (Dkt. No. 50.)

On January 19, 2015 Plaintiff filed its renewed motion to compel QMP to participate in class discovery. (Dkt. No. 53.)[2] Plaintiff asserted that it had not received the requested information regarding the "Subcontractor Network." (*Id.*) QMP subsequently provided the information for Plaintiff's evaluation.

Following a conversation on January 22, 2015 the Parties engaged in extensive informal settlement negotiations. (*See* Siprut Aff. ¶17.) The Parties continued their negotiations thereafter, finally reaching agreement on all materials terms of the settlement in February 2014. (*See id.*).

---

[2] Plaintiff voluntary withdrew its renewed motion to compel on January 21. (Dkt. Nos. 55, 56.)

-4-

On February 25, the Parties informed the Court that they had reached a settlement in principle. (Dkt. No. 58.) The Parties then spent several more weeks exchanging drafts of a final, written settlement agreement. (*See* Siprut Aff. ¶18.) After many exchanges of drafts and edits, the Parties were finally able to agree to the form and content of a settlement agreement in April 2015.

On May 28, 2015, Plaintiff filed a motion for preliminary approval of class action settlement, together with an affidavit in support of its motion and a text of proposed order to the motion. (Dkt. No. 63.) On June 3, this Court entered an Order granting preliminary approval of the Settlement. (Dkt. No. 66.) Under that Order, Plaintiff's motion for attorneys' fees is due today, August 24. The Court has set the Final Fairness Hearing for November 4, 2015, at 9:00 a.m. with papers in support thereof due on October 28, 2015. (*Id.* at ¶¶25, 27.)

### III. CLASS COUNSEL'S FEE REQUEST

#### A. Class Counsel Performed Substantial Work On Behalf Of The Class.

Class Counsel expended tremendous effort in bringing about this settlement on behalf of Class members. QMP's attorneys mounted a skilled defense, from the pleadings stage through settlement. The hours Class Counsel expended in battling QMP, which total 528.1 (Siprut Aff. ¶29) and include the following:

- **Pre-Complaint Factual Investigation**. Class Counsel began conducting a factual and legal investigation in 2014, starting with an analysis of the facsimile advertisement issued on QMP's behalf.

- **Legal Investigation**. With the initial factual investigation ongoing, Class Counsel investigated the litigation landscape. In addition, Class Counsel researched: (1) choice of law issues; (2) the appropriate venue and potentially applicable statutes, regulations, and common law claims under Illinois and various other states' laws; and (3) the elements and potential defenses for each of the proposed claims. Once the initial factual and legal research had been completed, Class Counsel began: (1) formulating the TCPA claims; (2) drafting, preparing, and filing the Complaint; and (3) engaging in correspondence with clients regarding the complaint and the case in general.

- **Motion Practice and Discovery**. Plaintiff moved to strike QMP's answer resulting in QMP agreeing to amend its answer. The Parties both issued written discovery requests. Plaintiff issued two sets of interrogatories and requests for production and one set of requests for admission. QMP issued one set of interrogatories, requests for production, and requests for admission. After reviewing QMP's responses to written discovery and finding them deficient, Plaintiff held Rule 37 conferences with QMP. Following the conferences, the Parties exchanged letters clarifying any agreement and substantiating each other's' positions. Plaintiff also issued a notice of deposition to QMP's corporate representative. During the course of discovery, Plaintiff reviewed documents concerning the QMP's fax broadcasting activities and the subcontractor program referred to in QMP's faxes. QMP insisted that its subcontractor program could not qualify as property, goods, or services under the TCPA, and hence, its faxes were not advertisements. The Parties exchanged numerous written correspondence has a company policy of obtaining the requisite consent prior to sending any faxes regarding its products or services. Plaintiff found QMP's practices insufficient and that QMP's fax qualifies as an advertisement. Over the course of several months, the Parties exchanged position statements and held conference calls. In order to support Plaintiff's arguments, Class Counsel also significantly researched class certification issues (and potential QMP defenses to class certification), given that class certification would have been the "make or break" point for a case of this nature. For example, Class Counsel researched the theory under which a class could be certified, even if QMP had obtained prior express permission or had an established business relationship with some or all of the Settlement Class members.

- **Interactions With Clients and the Members of the Class**. Since the inception of this case a year-and-half ago, Class Counsel had kept Plaintiff apprised of any developments and conferred with Plaintiff regarding discovery. Furthermore, during the course of the past two (2) months, Class Counsel has received various inquiries from Settlement Class Members, which has required Class Counsel to take the time to communicate with each individual, collect data, and keep Settlement Class Members apprised of any progress in the case.

- **Settlement**. Class Counsel conducted substantial and protracted settlement negotiations with QMP that spanned approximately six (6) months. Class Counsel researched and drafted memoranda regarding potential settlement structures, analyzed settlements in similar cases, reviewed materials obtained through informal discovery, and regularly engaged in telephonic conferences and email exchanges. After approximately six (6) months of negotiations, the parties were able to agree on the substantive terms that would provide immediate and direct benefits to the Class.

### B. The Percentage Of The Recovery Method Is Preferred In Determining Attorneys' Fee Awards.

"Under the 'common fund' doctrine, an attorney who recovers a common fund for the benefit of a class is entitled to a reasonable portion of the fund that is *made available* to the class rather than the amount actually *claimed by* the class." *In re Sw. Airlines Voucher Litig.*, No. 13-3264, 2015 WL 4939676, at *5 (7th Cir. Aug. 20, 2015) (emphasis original); *see Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole[.]").

The Seventh Circuit has strongly endorsed the percentage of the recovery benefit method as the best means for calculating class counsels' attorneys' fees in common fund cases. *See In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (instructing district courts to "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time") (collecting cases); *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund . . . in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis.") (internal citations omitted); *Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992), *as amended on denial of reh'g* (May 22, 1992) ("The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client. . . . [I]n large commercial litigation with prospects of multimillion dollar recoveries the percentage frequently is tapered—it might be 33 percent of the first million, 25 percent of the next million, and so on down."). "Given the issues likely to arise in computing a lodestar, courts across the country, both federal and state, are retreating from a lodestar analysis in favor of setting common benefit fees at a percentage of the

benefit secured . . . ." *In re Bayou Sorrel Class Action*, 6:04-cv-1101, 2006 WL 3230771, at *3 (W.D. La. Oct. 31, 2006) (collecting cases).

As demonstrated directly below, under the percentage of recovery method, the fee request here is entirely supported under presumptive benchmarks used in the Seventh Circuit.

> **1. The Requested Fees Represent 33.33% Of The Common Benefit Provided To The Class—Is Consistent With The Market And The Range Found Reasonable By The Courts.**

In deciding the appropriate fee under the percentage-of-recovery method, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) (*quoting In re Synthroid*, 264 F.3d at 718); *see also Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000) ("[T]he measure of what is reasonable [as an attorney fee] is what an attorney would receive from a paying client in a similar case.").

The fee agreements between Class Counsel and Plaintiff are contingent in nature. (*See* Siprut Aff. ¶2.) Courts have found that in commercial, non-class litigation, attorneys regularly negotiate contingent fee arrangements, for a fee of between 33.3% and 40% of the recovery. *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 97-cv-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (citing *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986); *see also* Richard Posner, *Economic Analysis of Law* § 21.9, at 534-35 (3d ed. 1986) (explaining established practice to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases).

The same is equally true in the class action context, including in the Seventh Circuit. *See Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 00-584-DRH, 2004 WL 287902, at *2 (S.D.

Ill. Jan. 22, 2004) (finding that 29% of the gross settlement is a reasonable fee award); *Gaskill*, 160 F.3d at 362-3 (noting that typical contingency fees are between 33% and 40% and that "[s]ome courts have suggested 25% as a benchmark figure for a contingent-fee award in a class action"); *Will v. Gen. Dynamics Corp.*, 06-698-GPM, 2010 WL 4818174, at *2 (S.D. Ill. Nov. 22, 2010) (stating that, where the market for legal services in a class action is only for contingency fee agreements, and there is a substantial risk of nonpayment for the attorneys, "the normal rate of compensation in the market" is "33.33% of the common fund recovered"); *Summers v. UAL Corp. ESOP Comm.*, 03-cv-1537, 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005) (finding that attorneys' fees amounting to 16% of the gross settlement "is clearly within the range of what has been deemed reasonable by the Seventh Circuit") (citing *In re Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d at 572); *Meyenburg v. Exxon Mobil Corp.*, 3:05-cv-15-DGW, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) ("33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation."); *see also Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) (stating that in consumer class actions, attorneys' fees should not exceed 50% "of the total amount of money going to class members and their counsel"). A Federal Judicial Center Study further supports the norm in attorney fee awards, finding that, in federal class actions, median attorney fee awards were in the range of 27% to 30%. Willging, Hooper & Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules*, at 69 (Fed. Judicial Center 1996).[3]

---

[3] *See also Chapa IV v. Trugreen, Inc.*, No. 13-cv-3957, Dkt. No. 50 (N.D. Ill. Jan. 27, 2015) (Leinenweber, J.) (awarding 1/3 of the settlement fund as attorneys' fees); *Martin v. Dun & Bradstreet, Inc.*, No. 12-cv-00215, Dkt. 66 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (awarding one third fee payment of distributed fund); *Cummings v Sallie Mae*, No. 12-cv-9984, Dkt. 91 (N.D. Ill. May 30, 2014) (Gottschall, J.) (awarding one-third of the common fund for fees); *Hanley v. Fifth Third Bank*, No. 12-cv-01612, Dkt. No. 86 (N.D. Ill. Dec. 23, 2013) (Castillo, J.) (awarding one third of common fund); *Desai v. ADT Sec.*

Here, Plaintiff is requesting 1/3 of the Settlement Amount in attorneys' fees (approximately $208,333.33). As explained above, the Settlement Amount is approximately $605,000 which may be increased if the actual costs of notice and administration fall below the $45,000 cap in the Agreement. Thus, the requested attorneys' fees amount is 33.33% of the total benefit obtained for the class.[4]

### C. The Requested Fees Are Also Appropriate Under the Lodestar Method.

A lodestar calculation supports the request, and underscores the reasonableness of the Parties' compromise on this issue. *See Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247-48 (7th Cir. 2014) ("[W]e are of the opinion that both the lodestar approach and the percentage approach may be appropriate in determining attorney's fee awards, depending on the circumstances . . . The decision whether to use a percentage method or

---

*Servs., Inc.*, No. 11-cv-01925, Dkt. 243 (N.D. Ill. June 21, 2013) (Bucklo, J.) (approving payment of one-third of common fund); *Paldo Sign & Display Co. v. Topsail Sportswear*, *Inc.*, No. 08-cv-05959, Dkt. 116 (N.D. Ill. Dec. 21, 2011 (Kennelly, J.) (approving one-third of the settlement fund plus expenses); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 07-cv-05456, Dkt. 424 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (same); *Saf-TGard Int'l, Inc., v. Seiko Corp. of Am.*, No. 09-cv-00776, Dkt. No. 100 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (same); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-cv-05953, Dkt. No. 146 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (same); *Hinman v. M & M Rental Ctr., Inc.*, No. 06-cv-01156, Dkt. No. 225 (N.D. Ill. Oct. 6, 2009) (Bucklo, J.) (same); *Holtzman v. CCH*, No. 07-cv-07033, Dkt. 33 (N.D. Ill. Sept. 30, 2009) (Nordberg, J.) (same); *CE Design, Ltd. v. Exterior Sys., Inc.*, No. 07-cv-00066, Dkt. No. 39 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (same).

[4] The inclusion of fees in calculating the total monetary value of class relief is appropriate. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) (stating that the value of relief for the Class is "the fee plus what the class members received."); *Johnston v. Comerica Mortg. Corp.,* 83 F. 3d 241, 246 (8th Cir. 1996) ("The award to the class and the agreement on attorney fees [and costs] represent a package deal. Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery."); *Vista Healthplan, Inc. v. Warner Holdings Co. III,* 246 F.R.D. 349, 363 (D.D.C. 2007) ("because the attorneys' fees are borne by defendants and not plaintiffs, they represent a valuable part of the settlement"). The Seventh Circuit has "rejected the notion that the fees must be calculated proportionally to damages. . . Congress wants even small violations of certain laws to be checked through private litigation and because litigation is expensive, it is no surprise that the cost to pursue a contested claim will often exceed the amount in controversy". *Anderson v. AB Painting & Sandblasting, Inc.*, 578 F.3d 542, 545 (7th Cir. 2009); *see Trustees of the Michiana Area Electrical Works Health & Welfare Fund v. TGB Unlimited, Inc.*, 2:13-CV-199-JEM, 2015 WL 1865561 (N.D. Ind. April 22, 2015) (same).

-10-

a lodestar method remains in the discretion of the district court.") (quoting *Florin*, 34 F.3d at 566).

To determine the reasonableness of attorneys' fees under the lodestar method, the first step is to calculate a base lodestar amount by "multiplying a reasonable hourly rate by the number of hours reasonably expended." *Gastineau v. Wright,* 592 F.3d 747, 748 (7th Cir. 2010) (citing *Hensley*, 461 U.S. at 433-37 (1983)). Here, the time summary included in the Siprut Affidavit accurately reflects the extensive work Class Counsel performed—and expects to perform to see the case through to completion—in this novel and complex litigation. To date, three attorneys at Class Counsel's firm have spent 528.1 hours collectively in prosecuting this action for a total lodestar amount of $237,048.00 (Siprut Aff. ¶29.) As detailed in the Affidavit of Joseph Siprut, the hourly rates utilized by Siprut PC's attorneys and legal staff (1) have been previously approved by courts throughout the country and this district; (2) are the same hourly rates charged by Siprut PC to outside clients; and (3) are demonstrably *lower* than the median hourly rate in the legal market based on the hourly rates charged in other cases by attorneys with similar experience, skill and reputation. (*Id*. ¶¶27-34.)

The time summary provided in the Siprut Affidavit is sufficient to form the basis of the fee request. The Supreme Court has explicitly held that

> trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of the district court's superior understanding of the litigation.

*Fox v. Vice,* 131 S. Ct. 2205, 2216 (2011) (internal quotations omitted). Class Counsel's Affidavit and the time records summarized therein are thus more than sufficient for establishing lodestar figures.

The base lodestar is typically adjusted using a multiplier to take into account various factors in the litigation that affect the reasonableness of the requested fees. *See, e.g.*, *Cook v. Niedert,* 142 F.3d 1004, 1015 (7th Cir. 1998); *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 255 (7th Cir. 1988). These factors include "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Gastineau*, 592 F.3d at 748. When applying a multiplier to the base lodestar amount, courts should also consider the risk plaintiff's counsel assumes in recovering nothing. *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975-76 (7th Cir. 1991) (remanding case for recalculation of attorneys' fees because the trial court failed to award a risk multiplier). Multipliers can range from 2 to 4 or even higher. *See In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. 322 (N.D. Ill. 1981) (applying a lodestar multiplier of 4 to lead counsel's lodestar and 2 to other counsels' lodestar). "The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Id.* (citing *Connolly v. Nat'l Sch. Bus. Serv., Inc.*, 177 F.3d 593, 597 (7th Cir.1999)).

In this case, as detailed above, Class Counsel's base lodestar is $237,048. QMP has already agreed to pay up to 1/3 of the Settlement Amount or approximately $208,333.33 in fees. Thus, the Court only needs to award the agreed-upon fees, which is ***12% less*** than Class Counsel's base lodestar.[5] Because courts routinely use positive multipliers in awarding fees, awarding 1/3 of the Settlement Amount—with a ***negative*** multiplier—is certainly within the range of reasonableness considering the risk of non-recovery and the excellent result achieved. *See Harman*, 945 F.2d at 975 (noting "[a risk] multiplier is, within the court's discretion,

---

[5] That figure was calculated by dividing $208,333 by $237,048.

appropriate when counsel assume a risk of non-payment in taking a suit" and "[m]ultipliers anywhere between one and four . . . have been approved"); *In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. at 327 (applying a lodestar multiplier of 4 to lead counsel's lodestar and 2 to other counsels' lodestar); *In re Brand Name Prescription Drugs Antitrust Litig.*, 2000 WL 204112, (N.D. Ill. Feb. 9, 2000) (awarding $91 million above lodestar and noting that "[an] award of more than two times the lodestar calculation is believed to be fair and just in these circumstances").

Accordingly, the requested fee award of 1/3 of the Settlement Amount (approximately $208,333.33) is reasonable.

## IV. THE REQUESTED INCENTIVE AWARD TO THE REPRESENTATIVE PLAINTIFF IS PROPER.

Finally, Plaintiff requests that the named plaintiff and class representative receive an incentive award of $5,000, which, like attorneys' fees, was the result of a negotiated compromise. The rationale for awarding incentive payments to named plaintiffs is that they should be compensated for the expense or risk they have incurred in conferring a benefit on other members of the class. *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005). Incentive awards are appropriate "to encourage or induce an individual to participate" in a class action law suit. *Id.*

Moreover, and similar to the fee request, comparisons to incentive awards in other similar class action settlements further underscore that this amount is reasonable and fair. *See, e.g.*, *In re Sw. Airlines Voucher Litig.*, 2013 WL 5497275, at *1 (N.D. Ill. Oct. 3, 2013) (each of two class representatives received $15,000 incentive awards) *amended on other grounds,* 2014 WL 2809016 (N.D. Ill. June 20, 2014); *Cook*, 142 F.3d at 1016 (awarding $25,000 incentive award); *Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) ($30,000

awarded from settlement fund of $10 million).

In this case, the class representative plaintiff has contributed substantially to this litigation and has invested considerable time, at its own expense, to do so. Plaintiff aided our initial investigation of the claims, and worked to provide a variety of documentation (initially at our request, and then additionally as the Parties exchanged information) to support the asserted claims on behalf of the Class. Plaintiff also spent several hours with us on the phone discussing the case and its progress, and particularly the scope of the settlement eventually achieved. (Siprut Aff. ¶3.)

## V.    CONCLUSION

For the reasons set forth above, Class Counsel respectfully suggests that the proposed (and agreed-upon) award of attorneys' fees and costs in the amount of 1/3 of the Settlement Amount (approximately $208,333.33)—and the class representative award of $5,000—is fair, appropriate, and reasonable, and requests the Court enter an Order approving these amounts.

Dated: August 24, 2015

Respectfully submitted,

By: *s/ Joseph J. Siprut*

Joseph J. Siprut
*jsiprut@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
**SIPRUT PC**
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.241.1260
www.siprut.com

***Counsel for Plaintiff and the Settlement Class***

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiff's Motion For Attorneys' Fees, Costs And Incentive Award** was filed this 24th day of August, 2015, via the electronic filing system of the Northern District of Illinois, which will automatically serve all counsel of record.

                                                      */s/ Joseph J. Siprut*

4826-9074-2054, v. 1