**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AL AND PO CORPORATION, | ) | |
| individually and on behalf of all others | ) | |
| similarly situated, | ) | |
| | ) | Case No. 14-cv-1243 |
| Plaintiff, | ) | |
| v. | ) | Hon. Thomas M. Durkin |
| | ) | |
| QUALITY MEDICAL PRODUCTS, LLC, | ) | |
| a Florida limited liability company, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR**
**<u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

<u>Submitted by:</u>

Joseph J. Siprut
*jsiprut@siprut.com*
Ismael T. Salam
*isalam@siprut.com*

**SIPRUT PC**
17 N. State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.241.1260
<u>www.siprut.com</u>

***Counsel for Plaintiff***
***and the Settlement Class***

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

PROCEDURAL HISTORY ........................................................................................................1

ARGUMENT ...............................................................................................................................5

I. COMPONENTS OF THE SETTLEMENT ...................................................................5

      A.      The Settlement Class....................................................................................5
      B.      Benefits To Settlement Class Members .......................................................5
      C.      Incentive Award to Class Representative ......................................................6
      D.      Attorneys' Fees and Costs ...........................................................................6

II. THE SETTLEMENT CLASS SHOULD BE CERTIFIED BECAUSE IT MEETS ALL
THE REQUIREMENTS OF RULE 23 ..........................................................................6

      A.      Numerosity – Federal Rule of Civil Procedure 23(a) ...........................7
      B.      Commonality/Predominance –
               Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3) .......................8
      C.      Typicality – Federal Rule of Civil Procedure 23(a)(3) .......................9
      D.      Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4)..........10
      E.      Superiority – Federal Rule of Civil Procedure 23(b)(3) ....................11

III. THE PROPOSED SETTLEMENT IS FAIR
AND SHOULD RECEIVE FINAL APPROVAL ............................................................11

      A.      Strength of the Case Measured Against the Settlement.........................................13
      B.      The Complexity, Length, and Expense of Continued Litigation ..........................15
      C.      The Settlement Class' Reaction And Lack of Opposition To The Settlement ......16
      D.      Class Counsel's Opinion .............................................................................16
      E.      The Stage of the Proceedings and the Amount of Discovery Completed..............17

IV. THE COURT APPROVED NOTICE PROGRAM SATIFIES DUE PROCESS ............18

CONCLUSION ...........................................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**UNITED STATES SUPREME COURT CASES**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997).................................................................................................6

*Carson v. American Brands, Inc.,*
450 U.S. 79 (1981) .................................................................................................13

*Wal-Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541 (2011).............................................................................................8

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee,*
616 F.2d 305 (7th Cir. 1980) .................................................................................12

*Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.,*
747 F.3d 489 (7th Cir. 2014)...................................................................................7

*Butler v. Sears, Roebuck & Co.,*
2012 WL 5476831 (7th Cir. Nov. 13, 2012) ...........................................................9

*Cotton v. Hinton,*
559 F.2d 1326 (5th Cir. 1977) ...............................................................................14

*E.E.O.C. v. Hiram Walker & Sons, Inc.,*
768 F.2d 884 (7th Cir. 1985) ........................................................................12, 13, 15

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.,*
128 F.3d 1074 (7th Cir. 1997) ...............................................................................12

*In re Corrugated Container Antitrust Litig.,*
643 F.2d 195 (5th Cir. 2010) .................................................................................17

*Ira Holtzman, C.P.A. v. Turza,*
728 F.3d 682 (7th Cir. 2013) ...................................................................................9

*Isby v. Bayh,*
75 F.3d 1191 (7th Cir. 1996) ........................................................................12, 13, 15

*Marcial v. Coronet Ins. Co.,*
880 F.2d 954 (7th Cir. 1989) ...................................................................................7

*Patterson v. Gen. Motors Corp.,*
631 F.2d 476 (7th Cir. 1980) ...................................................................................8

*Rosario v. Livaditis*,
963 F.2d 1013 (7th Cir. 1992) ............................................................................8

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
463 F. 3d 646 (7th Cir. 2006) ...........................................................................13

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) .......................................................................12, 13

**UNITED STATES DISTRICT COURT CASES**

*Am. Civil Liberties Union Resolution Corp.*,
128 F.3d 1074 (7th Cir. 1997) ..........................................................................12

*Bayat v. Bank of the West*,
No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ...........................15

*Cannon v. Texas Gulf Sulphur Co.*,
55 F.R.D. 308 (S.D.N.Y. 1969) .........................................................................14

*Fletcher v. ZLB Behring LLC*,
245 F.R.D. 328 (N.D. Ill. 2006)...........................................................................9

*Gomez v. Ill. State Bd. of Educ.*,
117 F.R.D. 394 (N.D. Ill. 1987)..........................................................................10

*Hinman v. M and M Rental Ctr., Inc.*,
545 F. Supp. 2d 802 (N.D. Ill. 2008) ..................................................................10

*Hispanics United of DuPage Cty. v. Vill. Of Addison, Ill.*,
988 F. Supp. 1130 (N.D. Ill. 1997) .....................................................................12

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
789 F. Supp. 2d 935 (N.D. Ill. 2011) ..................................................................16

*In re Cendant Corp. Secs. Litig.*,
109 F. Supp. 2d 235 (D.N.J. 2000) .....................................................................14

*In re Mexico Money Transfer Litig.*,
164 F. Supp. 2d 1002 (N.D. Ill. 2000) .................................................................16

*In re Neopharm, Inc. Securities Litig.*,
225 F.R.D. 563 (N.D. Ill. 2004)..........................................................................10

*In re RJR Nabisco, Inc. Secs. Litig.*,
1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) ............................................................................14

*Maxwell v. Arrow Fin. Servs., LLC*,
2004 WL 719278 (N.D. Ill. March 31, 2004) ............................................................................7

*Pope v. Harvard Banchares, Inc.*,
240 F.R.D. 383 (N.D. Ill. 2006) ............................................................................7

*Radmanovich v. Combined Ins. Co. of Am.*,
216 F.R.D. 424 (N.D. Ill. 2003) ............................................................................9

*Scholes v. Stone, McGuire, & Benjamin*,
143 F.R.D. 181 (N.D. Ill. 1992) ............................................................................8

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) ............................................................................17

*Smith v. Nike Retail Servs., Inc.*,
234 F.R.D. 648 (N.D. Ill. 2006) ............................................................................7

*Whitten v. ARS Nat'l Servs. Inc.*,
2001 WL 1143238 (N.D. Ill. Sept. 27, 2001) ............................................................................8

**STATUTES AND FEDERAL RULES**

Fed. R. Civ. P. 23 ............................................................................ *passim*

47 U.S.C. § 227 ............................................................................1, 14

**MISCELLANEOUS**

Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS
(4th ed. 2002) ............................................................................7

*Manual for Complex Litigation*
(4th edition) ............................................................................17

## <u>EXHIBIT LIST</u>

Settlement Agreement and Release ...................................................................................Exhibit 1

Affidavit of Joseph J. Siprut .............................................................................................Exhibit 2

Declaration of Phil Cooper ...............................................................................................Exhibit 3

Pursuant to Fed. R. Civ. P. 23, Plaintiff AL And PO Corporation ("Plaintiff"), by its counsel, respectfully submits the following as its Motion For Final Approval Of Class Action Settlement. For the reasons detailed below, Plaintiff respectfully requests that the Court enter an Order granting final approval of the Settlement as fair, reasonable, and adequate.[1]

## INTRODUCTION

This case is based on the allegation that Defendant Quality Medical Products, LLC ("QMP") sent unsolicited advertisements with deficient opt-out notices to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

Class Counsel has secured a $650,000 common fund (the "Fund") through strong and hard-fought settlement negotiations with QMP. All expenses, including payments to Settlement Class members, notice and administration costs, attorneys' fees, and the incentive award are paid out of the Fund. Following preliminary approval by this Court, extensive notice was given to Settlement Class members in accordance with the Settlement Agreement (attached as Exhibit 1 hereto) and the Preliminary Approval Order (Dkt No. 66). Only one Settlement Class member sought to be excluded, and ***not one member objected to the settlement***. As such, since the Settlement Class has overwhelmingly approved the Settlement after being provided notice, and since the Settlement is demonstrably an outstanding result that meets or exceeds the requisite standards, this Settlement should now receive final approval.

## PROCEDURAL HISTORY

On February 19, 2014, Plaintiff filed a class action complaint ("Complaint") against QMP in the United States District Court for the Northern District of Illinois. (Dkt. No. 1.) On

---

[1] All defined terms in this brief are intended to have the definitions assigned to them in the Settlement Agreement.

behalf of itself and a proposed class, Plaintiff alleged that QMP sent (or had sent on its behalf) facsimile advertisements to unwilling recipients with deficient opt-out notices in violation of the TCPA. (*See generally* Dkt. No. 1.) On February 24, 2014, this Court set an initial status hearing for April 29, 2014. (Dkt. No. 9.) After receiving service of process, QMP moved for an extension of time to answer or otherwise plead until and through April 8, 2014. (Dkt. No. 12.) This Court granted QMP's motion for extension of time. (Dkt. No. 14.)

On April 8, 2014, QMP filed its answer to the Plaintiff's Complaint, denying the substance of the allegations and raising several affirmative defenses, including, but not limited to, Plaintiff failed to state a claim upon which relief can be granted, Plaintiff lacked standing, and Plaintiff consented to receive the faxes at issue in this case. (Dkt. No. 16.) On April 24, the Parties submitted a Joint Initial Status Report setting forth a proposed discovery schedule. (Dkt. No. 17.) The proposed discovery plan included issues concerning class discovery. (*Id.*) Neither party requested bifurcation of discovery. (*Id.*)

On April 28, 2014, Plaintiff moved to strike QMP's answer and affirmative defenses. (Dkt. No. 18.) Subject to an agreement by the parties, Plaintiff's motion was denied without prejudice on June 19, 2014, and QMP was required to file an amended answer on or before July 13, 2014. (Dkt. No. 22.) A new status hearing was set for February 4, 2015, which was later continued. (*Id.*) On June 2, 2014, QMP filed its amended answer and affirmative defenses. (Dkt. No. 23.)

On June 25, 2014, Plaintiff served its initial disclosures. (Affidavit of Joseph J. Siprut ("Siprut Aff."), attached hereto as Exhibit 2, ¶8.) That same day, Plaintiff also served its first set of requests for admission, requests for production, and interrogatories. (*See* Dkt. Nos. 41, 53.) After Plaintiff agreed to two extensions, QMP provided its responses on August 15. (*See id.*) On

September 4, QMP filed an agreed motion for a protective order, which this Court granted on September 5. (Dkt. Nos. 28-30.)

On September 5, 2014, QMP provided Plaintiff with its first settlement demand. (Siprut Aff. ¶9.) Throughout September and October 2014, Plaintiff and QMP exchanged several communications and settlement demands, in which they voluntarily exchanged information, discussed and exchanged viewpoints on the law, and had a number of specific conversations regarding QMP's specific defenses to liability and class certification. (*See id.*)

On September 10, 2014, the Parties jointly moved for court assistance regarding stipulation of Plaintiff's motion for class certification. (Dkt. No. 32.) This Court denied that motion. (Dkt. No. 34.) The Parties jointly filed a stipulation whereby QMP agreed not to attempt to "pick off" Plaintiff with a settlement offer after the Court dismissed without prejudice Plaintiff's motion for class certification. (Dkt. No. 35.) Pursuant to the stipulation, this Court dismissed without prejudice Plaintiff's motion for class certification. (Dkt. No. 36.)

On September 12, 2014 the Parties held a discovery conference pursuant to Local Rule 37.2. (*See* Dkt. Nos. 41, 53.) On September 15, QMP provided supplemental responses and its initial production. (*See id.*) On October 1, 2014 the Parties held a second Rule 37.2 discovery conference. (*See* Dkt Nos. 41, 53.) QMP provided supplemental responses and production on October 10. (*See id.*)

On November 11, 2014 Plaintiff moved to compel QMP to participate in class discovery. (Dkt. No. 41.) On November 13, 2014, QMP moved for an extension of time to complete discovery. (Dkt. No. 43.) On November 17, 2014 QMP moved to stay discovery pending a settlement conference before Magistrate Judge Susan E. Cox. (Dkt. No. 46.) On November 20, 2014, this Court entered and continued Plaintiff's motion to compel and QMP's motions for

extension of time to complete discovery and to stay discovery. (Dkt. No. 49.) During which time, QMP would produce certain information regarding its "Subcontractor Network." This Court denied all three of those motions as moot without prejudice. (Dkt. No. 50.)

On January 19, 2015, Plaintiff filed its renewed motion to compel QMP to participate in class discovery. (Dkt. No. 53.)[2] Plaintiff asserted that it had not received the requested information regarding the "Subcontractor Network." (*Id.*) QMP subsequently provided the information for Plaintiff's evaluation. Following a conversation on January 22, 2015, the Parties engaged in extensive informal settlement negotiations. (Siprut Aff. ¶13.) The Parties continued their negotiations thereafter, finally reaching agreement on all materials terms of the settlement in February 2015. (*See id.*). On February 25, 2015 the Parties informed the Court that they had reached a settlement in principle. (Dkt. No. 58.) The Parties then spent several more weeks exchanging drafts of a final, written settlement agreement. (Siprut Aff. ¶13.) After many exchanges of drafts and edits, the Parties were finally able to agree to the form and content of a settlement agreement in April 2015.

On May 28, 2015, Plaintiff filed a motion for preliminary approval of class action settlement, together with an affidavit in support of its motion and a text of proposed order to the motion. (Dkt. No. 63.) On June 3, this Court entered an Order granting preliminary approval of the Settlement. (Dkt. No. 66.) On August 24, 2015, Plaintiff filed its Motion For Attorneys' Fees, Costs, And Incentive Award, requesting the Court to award attorneys' fees in the amount of 1/3 of the Fund after Notice and Administration Costs are deducted, and an incentive award to Plaintiff in the amount of $5,000. (Dkt. No. 67 at 1.) Notice And Administration Costs have been finalized and amount to $20,563.75. (Siprut Aff. ¶14.) The Court has set the Final Fairness

---

[2] Plaintiff voluntary withdrew its renewed motion to compel on January 21, 2015. (Dkt. Nos. 55, 56.)

Hearing for November 4, 2015, at 9:00 a.m. with papers in support thereof due on October 28, 2015. (Dkt. No. 66 at ¶¶25, 27.) Accordingly, Plaintiff now submits its brief in support of final approval of the Settlement.

## ARGUMENT

I.   **COMPONENTS OF THE SETTLEMENT.**

A.   **The Settlement Class.**

The Settlement Class provisionally certified by this Court on June 3, 2015 is defined as:

> All persons and entities: (a) who in 2013 were subscribers to a telephone number to which was sent one or more facsimiles ("Subcontractor Faxes") inviting recipients to contact QMP about its subcontractor network, which is used to service Medicare members receiving CPAP and BiPAP equipment, or who in 2013 were the owners of a facsimile machine to which a Subcontractor Fax was sent; (b) who in 2013 were subscribers to a telephone number listed on one or both of the two spreadsheets QMP created for purposes of sending the Subcontractor Faxes; (c) who were recipients of a Subcontractor Fax; *or* (d) who in 2013 had a registration with the National Provider Identifier ("NPI") Registry that included a telephone number described in (a) or (b) above.

(Dkt. No. 66 at 2.)

B.   **Benefits To Settlement Class Members.**

The Settlement establishes the following relief for Settlement Class members:

- **Payments Available To The Settlement Class.** Within sixty (60) days of the date that Notice is sent by fax, Settlement Class members must submit a claim form to the Settlement Administrator by fax or mail. Each Settlement Class Member who submits a timely and valid claim form shall be entitled to a check for cash payment equal to a *pro rata* share of the Fund.

- **Undistributed Funds.** Within thirty (30) days following the last void date of the checks issued to Settlement Class members for payment of claims, the Settlement Administrator will report to the Parties if there are any uncashed checks or unclaimed or undistributed money from the Fund. In the event that there are undistributed funds after all payments required under the Settlement Agreement are made, the Parties may make proposals to the Court for equal distribution of such remaining funds to a *cy pres* recipient.

- **No Reversion.** No part of the Fund shall revert to QMP.

**C.      Incentive Award to Class Representative.**

Subject to Court approval, Plaintiff requests a service award of $5,000 in recognition of its contributions to the Class, the time it spent assisting with the prosecution of this case, and the risk it incurred in commencing the action, both financial and otherwise. (Dkt. No. 67.)

**D.      Attorneys' Fees and Costs.**

Class Counsel requests total fees and expenses in the amount of $208,145.42 which represents 1/3 of the Fund after the deduction of notice and administration costs and incentive award. (Dkt. No. 67.)

## II.      THE SETTLEMENT CLASS SHOULD BE CERTIFIED BECAUSE IT MEETS ALL THE REQUIREMENTS OF RULE 23.

To certify a class under Rule 23, the Court must find that the proposed class meets the elements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2) or (3). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). "Settlement is relevant to class certification" and is "a factor in the calculus." *Id.* at 619, 622. Indeed, the Supreme Court "has expressly approved the use of the class settlement device." *Id.* at 618. Plaintiff seeks conditional certification of the Settlement Class under Rule 23(b)(3), its appointment as class representative solely for the purposes of the Settlement, and appointment of its counsel as Class Counsel solely for the purposes of the Settlement.

The Plaintiff requests that the Court, for the purposes of settlement, certify the Settlement Class defined above. As discussed further below, the proposed Settlement Class meets each of the requirements of Rules 23(a) and (b), and therefore, certification is appropriate.

### A.      Numerosity — Federal Rule of Civil Procedure 23(a).

Rule 23(a)'s first requirement, numerosity, is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). There is neither a specific number required to satisfy this requirement, nor is a plaintiff required to state the exact number of potential class members. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006) (citing *Marcial v. Coronet Ins. Co.*, 880 F.2d 954 (7th Cir. 1989)); 3 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 7.20, 66 (4th ed. 2001). Instead, courts are permitted "to make common-sense assumptions that support a finding of numerosity." *Maxwell v. Arrow Fin. Servs., LLC*, 2004 WL 719278, at *2 (N.D. Ill. Mar. 31, 2004). "[A] class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014). Generally, where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met. *Pope v. Harvard Banchares, Inc*., 240 F.R.D. 383, 387 (N.D. Ill. 2006).

In this case, QMP downloaded from the National Provider Index Registry a total of 21,454 unique fax numbers in connection with its transmission of the subject faxes. Although QMP denies that it sent Subcontractor Faxes to all of these numbers, all such numbers will be included in the Class Definition. (Siprut Aff. ¶15.) Accordingly, the Class satisfies the numerosity requirement. *See* NEWBERG ON CLASS ACTIONS § 3:5, 243-46 (4th ed. 2002) ("Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands. . . In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met.").

### B. Commonality/Predominance — Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).

The commonality element requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts recognize that there may be factual differences between class members, but "factual variations among class members' claims" do not themselves "defeat the certification of a class." *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992) (citing *Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980)), *cert. denied*, 451 U.S. 914 (1980)), *cert. denied*, 506 U.S. 1051 (1993). In fact, the threshold for commonality is not high. *Scholes v. Stone, McGuire, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992). Rather, commonality exists if a common nucleus of operative fact exists, even if as to one question of law or fact. *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011) ("[C]ommonality requires that the claims of the class simply "depend upon a common contention . . . of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."); *Whitten v. ARS Nat'l Servs. Inc.*, 2001 WL 1143238, *3 (N.D. Ill. Sept. 27, 2001) (commonality is often found where "Defendants have engaged in standardized conduct toward the members of the proposed class").

The Settlement Class shares common questions of fact and law that predominate over issues affecting only individual Settlement Class members. Those common factual and legal issues include:

    a.   Whether QMP engaged in a pattern of sending fax advertisements;

    b.   The manner in which QMP compiled or obtained its list of fax numbers; and

    c.   Whether QMP thereby violated the TCPA.

Additionally, Rule 23(b)(3) provides that a class action may be maintained where the questions of law and fact common to members of the proposed class predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3); *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 331-32 (N.D. Ill. 2006). "Predominance . . . is a question of efficiency." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013). A class action is the more efficient procedure for determining liability and damages in a case such as this, where "loss, and the statutory remedy, are the same for all recipients[.]"*Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) *reh'g denied* (Sept. 24, 2013), *cert. denied,* 134 S. Ct. 1318, 188 L. Ed. 2d 306 (U.S. 2014).

In this case, common questions predominate for the Settlement Class because QMP's alleged unlawful conduct presents common questions with regard to all proposed Settlement Class members. *See Holtzman*, 728 F.3d at 684 ("Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients."). Thus, in the context of the proposed class-wide settlement, the predominance requirement is satisfied because liability and damages would have been decided predominantly, if not entirely, based on common evidence of QMP's conduct.

### C. Typicality — Federal Rule of Civil Procedure 23(a)(3).

Rule 23 also requires that a plaintiff's claims be typical of other class members' claims. Fed. R. Civ. P. 23(a)(3). The typicality requirement is closely related to the commonality requirement and is satisfied if the plaintiff's claims arise from "the same event or practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotations omitted). The existence of factual differences will not preclude a

finding of typicality. *Id.* "Typicality does not mean identical, and the typicality requirement is liberally construed." *In re Neopharm, Inc. Secs. Litig.*, 225 F.R.D. 563, 566 (N.D. Ill. 2004) (citation omitted).

Here, Plaintiff and the Settlement Class all received fax advertisements, and alleged that QMP sent or had sent on its behalf the faxes in violation of the TCPA, thereby entitling Plaintiff and the Settlement Class to actual or statutory damages. Moreover, there are no defenses that pertain to Plaintiff that would not also pertain to the Settlement Class. Accordingly, Plaintiff's claims are typical of the other Settlement Class members' claims.

### D. Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).

The final Rule 23(a) prerequisite requires that a proposed class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy the adequacy requirement, class representatives must establish that: (i) their claims are not in conflict with those of the proposed class, (ii) they have sufficient interests in the outcome of the case, and (iii) they are represented by experienced, competent counsel. *Hinman v. M and M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008). Furthermore, proposed class counsel must be competent and have the resources necessary to sustain the complex litigation necessitated by class claims; it is persuasive evidence that proposed class counsel have been found adequate in prior cases. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987).

Here, Plaintiff's interests are consonant with the interests of the other Settlement Class members—obtaining relief from QMP for its marketing of its products and services by facsimile transmissions. Plaintiff has no interests antagonistic to the interests of the other Settlement Class members. (Siprut Aff. ¶18.) Moreover, Plaintiff's counsel are well respected members of the legal community, have regularly engaged in major complex litigation, and have significant

-10-

experience in consumer class actions involving similar issues, scope, and complexity. (*Id.* ¶17.) Accordingly, both Plaintiff and its counsel have adequately represented the Settlement Class.

### E. Superiority — Federal Rule of Civil Procedure 23(b)(3).

In addition to satisfying Rule 23(a), a plaintiff seeking certification must satisfy one of the provisions of Rule 23(b). Rule 23(b)(3) provides that matters pertinent to a finding of superiority include: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

The present class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's and the other Settlement Class members' claims. The burden and expense of individual prosecution makes a class action superior to other available methods of resolution. Thus, absent a class action, Plaintiff contends it would be difficult, if not impossible, for individual members of the Settlement Class to obtain effective relief.

In sum, the Settlement Class meets the requirements of Rule 23(a) and 23(b)(3) and should be certified.[3]

## III. THE PROPOSED SETTLEMENT IS FAIR AND SHOULD RECEIVE FINAL APPROVAL.

Both judicial and public policies strongly favor the settlement of class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1198 (7th Cir. 1996); *Armstrong v. Bd. of Sch. Dirs. of the City of*

---

[3] As detailed in the Settlement Agreement, QMP does not oppose the request for class certification solely for the purposes of settlement.

*Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."). Courts look upon the settlement of lawsuits with favor because such settlements promote "the interests of litigants by saving them the expense and uncertainties of trial, as well as the interests of the judicial system by making it unnecessary to devote public resources to disputes that the parties themselves can resolve with a mutually agreeable outcome." *Hispanics United of DuPage Cty. v. Vill. Of Addison, Ill.*, 988 F.Supp. 1130, 1149 (N.D. Ill. 1997). Indeed, compromise is particularly appropriate in complex class action cases. *See id.*

In determining whether a district court should exercise its discretion to approve a class settlement as "fair," the Seventh Circuit has explained that district courts should "consider the facts in the light most favorable to the settlement," *Isby*, 75 F.3d at 1198-99 (*citing E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985)), and has identified several factors for analyzing whether a class action settlement should be given final approval including: : "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997); *Am. Civil Liberties Union of Ill. v. U.S. Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 818 (N.D. Ill. 2002).

The Supreme Court has cautioned, however, that in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also Hiram Walker*, 768 F.2d at

889 *cert. denied*, 478 U.S. 1004 (1986); *Isby*, 75 F.3d at 1196-97. Instead, a court's inquiry should be "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196.

Likewise, the Seventh Circuit has urged district courts to be mindful that "[t]he essence of settlement is compromise," so "the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution *after* trial." *Hiram Walker*, 768 F.2d at 889. Indeed, a district court should not reject a settlement "solely because [the settlement] does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200. Analysis of all these factors weighs in favor of finally approving the Settlement.

### A. Strength of the Case Measured Against the Settlement.

"The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Wong*, 773 F.3d at 864; *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

Plaintiff alleges that QMP violated the TCPA by sending unsolicited advertisements with deficient opt-out notices *en masse* to thousands of facsimile machines throughout the United States. Class Counsel and Plaintiff believe they have a strong case that QMP's conduct constituted a violation of the TCPA.[4] Plaintiff believes that through discovery and independent investigation, it would be able to establish at trial that QMP's actions were unlawful.

---

[4] When analyzing a settlement, a court should take counsels' and the parties' views into account. *In re Cendant Corp. Secs. Litig.*, 109 F. Supp. 2d 235, 255 (D.N.J. 2000) ("Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class.") (internal citation and quotations omitted); *In re RJR Nabisco, Inc. Secs. Litig.*, Nos. MDL No. 818 (MBM), 88 Civ. 7905 (MBM), 1992 WL 210138, at *4, (S.D.N.Y. Aug. 24, 1992) (court "should give deference, when considering the fairness of the proposed

-13-

While Plaintiff believes in the strength of its case, it must, however, realistically acknowledge several factors which counsel in favor or acceptance of this Settlement. QMP contends that the faxes it sent were not advertisements within the meaning of the TCPA. If QMP was successful on this basis alone, its conduct would not be a violation of the TCPA. *See* 47 U.S.C. § 227(a)(5) (defining advertisement as "any material advertising the commercial availability or quality of any property, goods, or services"). QMP has also asserted that Plaintiff and the members of the Class consented to receive the faxes by providing their fax numbers while registering with the NPI Registry, which may result in individualized issues barring class certification. Clearly, one of the factors to be considered as to the fairness of a class action settlement is a defendant's willingness and ability to mount just such a vigorous defense.

Also, the sheer amount of time it will take to litigate the case to conclusion weighs in favor of accepting the Settlement now. Under this Settlement, the Settlement Class will realize substantial and immediate benefits once the Settlement is approved. As explained above, the Settlement allows Settlement Class members to receive monetary relief. While Plaintiff believes that its claim for maximum statutory damages under the TCPA is strong, Plaintiff is also aware of the inherent risks and costs of continuing with complex litigation of this nature. If QMP were to prevail on any of its asserted defenses, Settlement Class members, including Plaintiff, would receive no relief *at all*. Given this possibility, a pro rata share of the Fund is a meaningful achievement.

---

settlement, to the judgment of experienced class counsel"); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (holding that in analyzing a class settlement, a trial court may rely on the judgment of experienced counsel and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel"). Also significant is the fact that QMP and its counsel support this Settlement. *Cannon v. Texas Gulf Sulphur Co.*, 55 F.R.D. 308, 316 (S.D.N.Y. 1969) (the Court may consider the views of all involved counsel when deciding whether to approve a settlement).

In all events, a settlement will not be rejected simply because it does not provide a complete victory to the plaintiffs (assuming that "complete victory" could be defined within the context of this litigation). *Hiram Walker*, 768 F.2d at 889. While it might be possible that, if the case were litigated to a conclusion, some class members would be able, at some unknown point in the future, to obtain a greater recovery through individual proceedings, it is also possible they could get less or nothing at all. *Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at *3 (N.D. Cal. Apr. 15, 2015) (granting final approval of TCPA class action settlement and holding "a settlement is in the interests of class members who otherwise may not be entitled to any relief should their claims fail on the merits"). Moreover, that recovery would be years in the future, at significantly greater expense to the Class. There is a significant risk that the Class would receive less or nothing at all if litigation proceeded to the bitter end.

This first factor—which the Seventh Circuit has reiterated is "the most important" one, *Isby*, 75 F.3d at 1199; *Hiram Walker*, 768 F.2d at 889—weighs strongly in favor of approving the Settlement because the class would receive substantial benefits despite QMP's colorable defenses. A comparison of the many obstacles to success on the merits in this class action against the monetary and other benefits contemplated by the Settlement Agreement supports the conclusion that this Settlement is fair, reasonable and adequate.

## B. The Complexity, Length, and Expense of Continued Litigation.

Due to the nature of Plaintiff's case, trial will require the collection of evidence and witness testimony from across the country. Both Parties would examine a number of QMP's current and former employees. QMP intends to assert a number of affirmative defenses that it contends bar Plaintiff's claim in whole or in part. QMP would present—and Plaintiff would necessarily attempt to rebut—evidence and testimony on whether QMP's fax constitutes an advertisement and whether individual Class members provided prior express consent to or had an

existing business relationship with QMP. The uncertainty as to whether these affirmative defenses apply in this case creates substantial risk for both sides. Plaintiff and proposed Class Counsel also recognize that the expense, duration, and complexity of protracted litigation would be substantial, and would require further briefing on numerous substantive issues, evidentiary hearings, and further discovery and the gathering of evidence and witnesses.

### C. The Settlement Class' Reaction And Lack Of Opposition To The Settlement.

Since this Court granted preliminary approval of the Settlement on June 3, 2015, *no individuals or Attorneys General have objected to the Settlement* and *only one entity has opted out*. (*See* Declaration of Phil Cooper (the "Cooper Decl."), attached hereto as Exhibit 3, ¶¶8, 9.) Thus, there has been no opposition to the settlement. *See In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F.Supp.2d 935, 961 (N.D. Ill. 2011) ("[I]t is illuminative that only a tiny fraction of the Class Members saw fit to opt out or to object."); *In re Mexico Money Transfer Litig.*, 164 F.Supp.2d 1002, 1021 (N.D. Ill. 2000) (holding that the fact that "99.9% of class members have neither opted out nor filed objections. . . is strong circumstantial evidence in favor of the settlements"), *aff'd,* 267 F.3d 743 (7th Cir. 2001). Thus, this factor weighs strongly in favor of final approval.

### D. Class Counsel's Opinion.

"The opinion of competent counsel is relevant to the question whether a settlement is fair, reasonable, and adequate under Rule 23." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586-87 (N.D. Ill. 2011). Here, Class Counsel has extensive experience in consumer class actions and complex litigation, and has settled (with court approval) numerous TCPA cases. (Siprut Aff. ¶17.) Class Counsel believes that the Settlement is beneficial to the Settlement Class and meets the class-certification requirements of Rule 23. As stated below, Settlement Class members

submitted 302 valid claim forms. If this Court approves the award of $208,145.42 in attorneys'

fees and $5,000 as Plaintiff's incentive award, each Class member who submitted a valid claim

shall receive a payment of $1,378.45. This is a *substantial* payout per Class member, given that

the Class members only needed to submit a one-page claim form. The fairness and sufficiency of

the Class relief is further underscored when weighed against QMP's anticipated defenses and the

inherent risks of litigation.

### E.  The Stage of the Proceedings and the Amount of Discovery Completed

The last factor to be considered by the Court is the stage of the proceedings and the

amount of discovery completed. Here, the Parties have engaged in extensive discovery.

Nevertheless, the amount of *formal* discovery taken is not a prerequisite to a class action

settlement. Courts have noted that, "the label of 'discovery' [either formal or informal] is not

what matters. Instead, the pertinent inquiry is what facts and information have been provided."

*Schulte*, 805 F. Supp. 2d at 587 (internal citation omitted); *In re Corrugated Container Antitrust*

*Litig.*, 643 F.2d 195, 211 (5th Cir. 2010) ("It is true that very little formal discovery was

conducted and that there is no voluminous record in the case. However, the lack of such does not

compel the conclusion that insufficient discovery was conducted.") (emphasis omitted);

MANUAL FOR COMPLEX LITIGATION (Fourth), § 11.423 (2004) (noting that informal discovery is

a recognized method of minimizing the cost, delay and burden associated with formal

discovery).

Here, ample information and data was exchanged as part of the formal discovery in the

course of litigation and informal discovery undertaken for settlement purposes. Class Counsel

requested, and QMP provided, information concerning the size of the Class and the nature of the

faxes. Class Counsel was thus well-equipped not just to make the decision whether to settle on

behalf of the Class, but also what the terms of such settlement would be.

## IV.    THE COURT-APPROVED NOTICE PROGRAM SATISFIES DUE PROCESS

The Parties effectuated class notice in a reasonable manner that was calculated to reach as many Settlement Class members as possible who would be bound by the Settlement. In this case, direct notice by facsimile was sent to each of the 21,454 unique fax numbers identified by QMP. Im addition, Class Counsel created a website on its domain with relevant settlement information. The notice plan approved by the Court on June 3, 2014 (Dkt. No. 66) provided the best notice practicable to apprise the Settlement Class of the pendency of this action, afforded them an opportunity to opt out of or present any objections to this Settlement, and complied fully with due process, as already found in the Preliminary Approval Order. *Id.*

QMP and the court-appointed Settlement Administrator—Kurtzman Carson Consultants, LLC—provided the Settlement Class with notice of the proposed settlement by the following methods, previously approved by the Court:

- **Facsimile Notice**. On May 29, 2015, Kurtzman Carson Consultants LLC ("KCC") received from the Defendant a computerized list of 33,884 fax numbers, characterized as the Fax List. After performing data analysis on the Fax List, KCC identified and removed 12,430 duplicate numbers, resulting in 21,454 unique numbers remaining on the Fax List. On or before July 9, 2015, KCC caused the Notice and Claim Form to be sent by facsimile to 21,454 fax numbers identified on the Fax List, making at least two attempts in the event that a transmission attempt failed. After all attempts, 13,500 transmissions were successful and 7,954 were unsuccessful. KCC received 302 Claim Forms, 1 Request For Exclusion, and no Objections. KCC also received a request from a Class Member to be removed from the Fax List. Because this Class Member did not specifically request to be excluded from the Settlement, the Parties agreed that this request does not qualify as a Request For Exclusion. (Cooper Decl. ¶¶4-

9.)

- **Internet Posting**. Class Counsel also set up a website—at its own expense—and posted the relevant documents, including, but not limited to, applicable deadlines, Class Counsel's contact information, and copies of the Class Notice; a downloadable Claim Form that could be submitted by facsimile or U.S. Mail; the Settlement Agreement; Preliminary Approval Order; and Fee Petition. (Siprut Aff. ¶19.)

Accordingly, the form and method of notice given to class members satisfies all the legal requirements of Rule 23, as well as the constitutional due process requirements.

## <u>CONCLUSION</u>

For the reasons set forth above, Class Counsel requests that the Court enter an order granting final approval of the Settlement.

Dated: October 28, 2015                 Respectfully submitted,

By: */s/ Joseph J. Siprut*
Joseph J. Siprut
*jsiprut@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
**SIPRUT PC**
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.241.1260

***Counsel for Plaintiff
and the Settlement Class***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiff's Motion For Final Approval Of Class Action Settlement** was filed this 28th day of October 2015 via the electronic filing system of the Northern District of Illinois, which will automatically serve all counsel of record.

<i>/s/ Joseph J. Siprut</i>